No. 49,672

STATE OF KANSAS, *Appellee,* v. CHESTER J. WORDS, *Appellant.*

(596 P.2d 129)

Opinion filed June 9, 1979.

*Randall H. Elam,* of Wichita, argued the cause and was on the brief for the appellant.

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Chester J. Words was convicted by a jury of two counts of kidnapping (K.S.A. 21-3420); two counts of aggravated robbery (K.S.A. 21-3427); attempted aggravated robbery (K.S.A. 21-3427 and K.S.A. 21-3301); and first degree felony murder (K.S.A. 21-3401).

The trial was lengthy and diverse claims of error are made. The basic facts will be set forth at this time and additional facts, where necessary, will be stated as the individual points are considered.

In November, 1975, or early December, 1975, the defendant escaped from a state mental hospital in Fulton, Missouri, where he had been committed for a competency evaluation by a Missouri court in connection with criminal charges. From Fulton he went to Kansas City. On December 15, 1975, he and his girlfriend, Karolyn Kaye Simmons, traveled to Wichita by bus where they took up abode with Simmons' roommate, Patricia Ann Malcolm. On December 18, 1975, at approximately 8:00 p.m., while Simmons was absent from the Malcolm residence, but Ms. Malcolm was present, defendant telephoned for a taxicab. The cab was dispatched to an address near the Malcolm home. Defendant departed shortly after the call was made. Witnesses in the area reported hearing gunshots from inside the cab and seeing the cab

careen down the street until it hit a fire hydrant. They saw a black male emerge from the vehicle and run down the street toward the Malcolm home. The cab driver, Nick Weber, was found dead inside the cab, having been shot four times in the back and in the back of his head.

Defendant returned to the Malcolm home some thirty to thirty-five minutes after his departure and was out of breath. He hid his gun and asked Ms. Malcolm for a change of clothes. Defendant then told her he had tried to rob a cab driver and had shot him. He later told Simmons the same story, plus some additional details. Over the next few days police officers came to the Malcolm home several times looking for defendant, but were told by the women that he was not there. At such times defendant was hiding in the home.

On December 23, 1975, Terry Bennett and Eddie Bullock, driving separate automobiles, arrived at the Malcolm residence to retrieve a stereo tape Simmons had borrowed. Simmons asked them to drive her and a friend to Kansas City. When they refused defendant entered the room with a gun in his hand and ordered Bennett and Bullock to lie face down on the floor. The men were then robbed of a billfold, cash, and car keys. At gunpoint the men were then forced by defendant, with Simmons' assistance, into the trunk of the Bennett automobile. With defendant driving Bennett's car and Simmons driving Bullock's car, the group started for Kansas City. After a short time Simmons parked the car she was driving and rode the rest of the way with defendant in Bennett's car. When the four arrived in Kansas City, Bennett's car was stopped, defendant ordered the two men out of the trunk and to start running, and he fired three or four shots to convince them to keep moving.

On January 3, 1976, officers executed a warrant for defendant's arrest at his mother's residence in Kansas City. Mrs. Words gave permission for officers to search the house and they found Simmons hiding under a bed and defendant hiding in a closet.

This is a companion case to *State v. Simmons* (unpublished opinion No. 48,665, decided November 5, 1977), wherein Simmons' convictions on two counts of kidnapping and two counts of aggravated robbery were affirmed. Simmons was tried and convicted prior to defendant's trial and she testified for the State herein. Defendant testified at trial and denied participation and involvement in any of the crimes.

We turn now to the issues raised on appeal.

I. *The trial court erred, as a matter of law, in permitting the State to introduce and show color slides of the body of Weber.*

A number of photographs and slides were admitted into evidence. Defendant objects to three of the autopsy slides on the grounds their sole purpose was to inflame the passion and prejudice of the jury and that they had no probative value.

This issue has frequently been before this court. Photographs are not rendered inadmissible merely because they are shocking or gruesome if they are relevant and material to the matters at issue. The admission of photographs of a decedent is not error when they are relevant to matters at issue, such as the cause and manner of death, and as an aid in understanding a pathologist's testimony. *State v. Gutierrez,* 225 Kan. 393, 590 P.2d 1063 (1979); *State v. Shultz,* 225 Kan. 135, 140, 587 P.2d 901 (1978); *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978); *State v. Soles,* 224 Kan. 698, 701, 585 P.2d 1032 (1978).

The State's theory of the case was that the cab driver was in the driver's seat when shot by defendant at close range from the back seat during an attempted robbery. The cause and manner of death were relevant and the slides were discussed by the pathologist in his testimony, although not shown to the jury until later in order to save the pathologist some time. The slides showed only the wounds inflicted by the victim's assailant prior to any alteration by autopsy procedures. The point is without merit.

II. *The trial court erred, as a matter of law, in denying defendant's motion for discharge on Count 5, the attempted aggravated robbery of Weber;* and

III. *The trial court erred, as a matter of law, in denying defendant's motion for discharge on Count 7, the felony murder of Weber.*

Count 5 of the information states:

"[O]n or about the 18th day of December, A.D., 1975, one CHESTER J. WORDS did then and there unlawfully, wilfully toward the perpetration of the crime of Aggravated Robbery as defined by K.S.A. 21-3427, commit the following overt act, to-wit: ordered a cab to 2256 N. Minneapolis, Wichita, Sedgwick County, Kansas, and demanded the cab driver to stop the car, in order to rob the driver, and then shot the cab driver four times with a .22 caliber revolver, and the said CHESTER J. WORDS, with the intention to commit said crime, failed in the perpetration thereof;"

These allegations are supported by the testimony of both Simmons and Ms. Malcolm. The latter testified that: (1) Defendant asked her to look up the telephone number of the cab company; (2) defendant called the number twice (the first time he became confused on directions); and (3) defendant left the house shortly thereafter and returned thirty to thirty-five minutes later. She testified as to defendant's statements to her upon his return as follows:

"Q. Would you describe for me and for the Jury exactly how that conversation took place as near as you can recall the exact words that were spoken?
"A. Well, he runs back into the house and I asked him what is wrong and he said, 'I had to shoot and kill a cab driver.' And then he asked did I have a place where he could hide; I told him no.
"Q. Did he describe how he shot the cab driver or why he shot the cab driver?
"A. He told me that he told the cab driver to give him the money and he said the cab driver asked him did he want a wreck, and the cab driver started going, speeded up and that he shot him, and he tries to jump out of the car and that his coat got caught in the car."

Simmons testified to similar statements defendant made to her after his statements to Ms. Malcolm.

In a criminal case, the issue on appeal is not whether the evidence established guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the State. *State v. Moody*, 223 Kan. 699, 704, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978); *State v. Childers*, 222 Kan. 32, Syl. ¶ 1, 563 P.2d 999 (1977).

Aggravated robbery is defined by K.S.A. 21-3427 as follows:

"Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

The relevant portion of the attempt statute (K.S.A. 21-3301) is as follows:

"(1) An attempt is· any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime."

Clearly, there was sufficient evidence to form a reasonable inference of guilt of attempted aggravated robbery.

Defendant next argues that by virtue of the fact there was insufficient evidence of the underlying felony (attempted aggravated robbery), Count 7 (felony murder) was not supported by

sufficient evidence. We have already determined there was sufficient evidence to support the conviction of attempted aggravated robbery, which controls this issue. The trial court did not err in denying defendant's motions for discharge as to Counts 5 and 7.

IV. *The trial court erred, as a matter of law, in refusing to instruct on second-degree murder and voluntary manslaughter as lesser included offenses of felony murder (Count 7).*

Ordinarily, in a felony murder case where the evidence of the commission of the underlying felony is clear and uncontroverted, no instruction on lesser degrees of homicide should be given. *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279 (1976); *State v. Masqua,* 210 Kan. 419, 502 P.2d 728 (1972), *cert. denied* 411 U.S. 951 (1973). Instructions on lesser degrees of homicide are required only in those cases where evidence of the commission of the underlying felony is weak, disputed, and unclear. *State v. Bradford,* 219 Kan. 336, 548 P.2d 812 (1976).

On separate occasions, shortly after the homicide, defendant told two persons he had killed the victim in the course of an attempted robbery, with details of how the killing had occurred. At trial defendant denied any involvement in the crime. Defendant's statements to the two persons were consistent with each other and with other evidence in the case. The jury could choose to believe that defendant's prior statements were correct, as testified to by Ms. Malcolm and Simmons, or that defendant was not involved in the homicide. Accordingly, the jury could find defendant guilty of felony murder or innocent. No error is shown in refusing to instruct on the lesser degrees of homicide.

V. *The trial court erred in not granting defendant's motion for instructions as to lesser included offenses on Counts 1 and 2 (kidnapping).*

There was no request for instructions on lesser included offenses in the two kidnapping counts (1 and 2), and the issue is not briefed on appeal. The point is deemed abandoned.

VI. *The trial court erred, as a matter of law, in denying defendant's motion for discharge on Counts 1 and 2, the kidnapping of Bullock and Bennett.*

Defendant was charged in Counts 1 and 2 with taking and confining Bullock and Bennett with intent to hold "to facilitate the flight and to facilitate the commission of the crime of Aggravated Robbery, and to terrorize the victim." Defendant con-

tends the confinement and transportation of Bullock and Bennett was not shown by the evidence to facilitate the commission of the crime of aggravated robbery, or substantially lessen the risk of detection.

Defendant and the State rely on *State v. Buggs,* 219 Kan. 203, 216, 547 P.2d 720 (1976), as the applicable law:

"We therefore hold that if a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a)  Must not be slight, inconsequential and merely incidental to the other crime;

"(b)  Must not be of the kind inherent in the nature of the other crime; and

"(c)  Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

The two victims were made to lie on the floor at gunpoint in a house in Wichita. They were then robbed. Subsequently, they were forced, again at gunpoint, to get into the trunk of a car into which they were locked and driven to Kansas City. Upon their arrival in Kansas City they were let out of the trunk by defendant (the individual with the gun at all earlier events), and were told to leave. Defendant then fired several shots to hasten their departure.

The transportation of the victims was not slight, inconsequential or merely incidental to the aggravated robberies; was not of a kind inherent to aggravated robbery; and substantially lessened the risk of detection. In addition to lessening the risk of detection of the aggravated robberies, there was evidence that defendant told Simmons he needed to get away from Wichita because of the murder and that he wanted to "take the next car that came through." There was also evidence that the police had been seeking defendant in the home in which he was hiding (and in which the robberies occurred) in connection with the murder.

This point is held to be without merit.

VII.    *The trial court erred, as a matter of law, in submitting to the jury Instruction No. 10 on aiding and abetting, there being no evidence to support said instruction.*

The trial court gave the following instruction:

"NO. 10

"A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"You are, therefore, instructed in this case that if you find beyond a reasonable doubt that the defendant knowingly counseled, aided, abetted, advised or procured another in the commission of the crime or crimes charged in the information, as elsewhere defined in these instructions, then he, individually, is guilty of such crimes as though he, by himself, without assistance, committed those crimes.

"A person who is guilty under the principle of law set forth in this instruction is also criminally responsible for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended."

### K.S.A. 21-3205(1) provides:

"A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

Defendant contends there was no evidence that he aided or abetted anyone as Simmons testified that her involvement in the aggravated robberies and kidnappings was the result of compulsion. This proposition might have some merit except for certain other factors present in the case. The victims' testimony does not corroborate this position and the evidence before the jury showed Simmons had previously been convicted of these crimes. Simmons' involvement was extensive and was under circumstances when she had opportunities to disassociate herself therefrom. The jury could conclude that she was an active and voluntary participant, as the jury in her own case had done. Under the totality of the circumstances the instruction was proper.

VIII.  *The trial court erred, as a matter of law, in submitting to the jury Instruction No. 11, concerning defendant's stay in Fulton State Mental Hospital;* and

IX.  *The trial court erred, as a matter of law, in prohibiting defendant's counsel from stating the reasons why defendant left Fulton State Mental Hospital.*

The trial court gave the following instruction:

"NO. 11

"You are instructed that while the law of the State of Kansas provides that insanity may be a defense to a criminal charge, there is no evidence in this case of such insanity on the part of the defendant.

"You are further instructed that confinement in a mental institution is not evidence of insanity which would constitute a defense to the charges in this case, and the sanity of the defendant is not to be considered by yourselves in arriving at a verdict."

Prior to the commencement of trial, defendant filed a notice of

intent to rely on an insanity defense. This was apparently abandoned during the trial. Defendant testified at great length, however, as to his stay at the mental hospital in Fulton, Missouri, where he had been confined under court order. This hospitalization continued until defendant escaped therefrom, said escape occurring shortly before the crimes herein. Defendant also referred to prior psychiatric hospitalizations. He apparently was anxious to convey to the jury what he considered to be inhumane and poor treatment he received at the hospital. This line of testimony presumably was aimed at showing good cause for leaving the facility and equally good cause to avoid return to the facility. Much of his testimony rambled and lacked direction. The jury could well have concluded defendant was suffering from some type of psychiatric problem.

Under the unique circumstances of the case, the instruction was not error. It served to clarify to the jury the law of Kansas as it applied to the sanity of the defendant in this particular case. Without the instruction the jury could very well have been confused as to how the evidence of defendant's psychiatric hospitalization should be considered.

The other issue relating to the hospitalization was the propriety of the trial court's refusal to allow defense counsel to state the reasons defendant left the hospital. Defense counsel complains that this restricted defendant's theory of the case as it provided a reason for his hiding out in Wichita and his interest in evading the police, which was separate and apart from the State's position that such efforts were to avoid apprehension for the crimes herein. The court specifically permitted argument on the fact defendant, as a result of the hospital escape, was a fugitive and did not want to return to the hospital. No error is shown in so limiting the closing argument of defense counsel.

X. *The trial court erred, as a matter of law, in sentencing defendant under the Habitual Criminal Statute.*

Defendant does not challenge the validity of the Habitual Criminal Act (K.S.A. 21-4504), nor does he challenge the adequacy of the evidence of the prior conviction. Defendant contends the court acted vindictively and arbitrarily by enhancing the sentence.

For support of this contention, defendant relies on various comments during the trial in which the trial court expressed

concern with the slow pace of the defense and that the defendant, rather than his attorney, appeared to be "running this case." No statements of which defendant was complaining occurred at sentencing.

It is necessary the complaining party show vindictive or retaliatory motives, or that judicial discretion was abused to obviate the penalty imposed. See *State v. Eaton,* 213 Kan. 86, 89, 515 P.2d 807 (1973). This court will not disturb a sentence imposed by a trial court on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression or corrupt motive. *State v. Bradley,* 215 Kan. 642, 648, 527 P.2d 988 (1974); *State v. Bradley,* 130 Kan. 759, 761, 288 Pac. 735 (1930).

All sentences were to run consecutively. In the aggregate, defendant was sentenced to 122 years to life on Counts 1-5 and to life on Count 7. (Count 6 was a first degree premeditated murder charge for the death of Nick Weber who was the victim in Count 7, the felony murder charge. Count 6 was dismissed.)

We have carefully reviewed the record and there is no evidence indicating defendant's sentencing was the product of any vindictive or retaliatory motive or that the trial court abused its discretion.

All points raised have been considered and found to be without merit, whether or not specifically set forth herein.

The judgment is affirmed.