No. 54,538

STATE OF KANSAS, *Appellee,* v. TANNEY THOMAS COBERLY, *Appellant.*

(661 P.2d 383)

Opinion filed March 26, 1983.

*Gene F. Anderson,* of Kent, Wichman & Anderson, of Hays, argued the cause and was on the brief for the appellant.

*S. Philip Stover,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Tanney Thomas Coberly (defendant-appellant) guilty of aggravated kidnapping (K.S.A. 21-3421), indecent liberties with a child (K.S.A. 21-3503) and rape (K.S.A. 21-3502).

On October 17, 1981, the defendant telephoned Ms. A., a

fifteen-year-old girl, and asked if she could babysit for him for a few hours that evening. Having previously performed this service for the defendant and his wife, Ms. A. obtained permission from her mother and agreed to babysit. Shortly thereafter, around 6:00 p.m., the defendant picked Ms. A. up at her home in Healey, Gove County, Kansas, in his small pickup truck.

After driving for a while the defendant told Ms. A. he did not want her to babysit, but wanted her to ride around with him to look at duck ponds. The defendant told Ms. A. he would take her home if she didn't want to ride around. Not knowing how to explain to her mother that the defendant didn't want her to babysit after all, Ms. A. continued to ride with the defendant.

The defendant drove around in the country, sometimes stopping to look at farm ponds. Ms. A. testified she did not recognize any of the roads they were driving on, and became confused and disoriented as to her location. The defendant tried to kiss her and began touching her. Becoming frightened, Ms. A. told the defendant if he would not take her home she would walk. The defendant told Ms. A., in essence, that if she could find the road to get back home he would take her, or if she would have sex with him he would take her home. Ms. A. replied that she would find her own way home, but found that she couldn't locate any familiar road signs and was disoriented. Ms. A. testified that once she tried to get out of the truck, but the defendant reached over and shut the door, preventing her escape.

The defendant pulled the truck over to the side of the road and stopped. He told Ms. A. to take her clothes off, and when she refused he pulled out a knife and threatened to "run it across [her] throat" if she did not comply with his requests. The defendant then had Ms. A. lie down across the seats of the truck and raped her. He ceased when a car approached from the opposite direction, and walked around the truck to get in the driver's side. Ms. A. testified she thought about trying to drive the truck off at this time but did not know where the keys were and didn't know how to drive with a stick shift. The defendant drove to a tavern in Utica where he bought Ms. A. a soft drink and got change. He then drove to Healey, where, at Ms. A.'s request, he dropped her off at a friend's house. He gave Ms. A. five dollars so that she could say she had been babysitting. It was approximately 10:00 p.m. at this time.

Her friend testified Ms. A. appeared scared and shocked, and her eyes were red. After some coaxing Ms. A. said she had been raped by the defendant. Her friend convinced Ms. A. to talk to the sheriff, whereupon they drove to Dighton and contacted the Lane County Sheriff's office. Ms. A. told the sheriff she had been raped by the defendant and was taken to the Lane County hospital where she underwent a physical examination by a doctor who prepared a rape examination kit. This doctor testified at trial there was no evidence of bruising of the victim or trauma to the entrance of the vagina, but the cervix was swollen and cracked, which might have been caused by recent sexual intercourse.

Larry Morris, a criminologist with the Kansas Bureau of Investigation who conducted the analysis of the rape kit, testified the fluid taken from Ms. A.'s vagina contained a large number of sperm, indicating she had engaged in intercourse within twelve hours of when the physical examination was conducted. Morris further testified that based upon blood typing tests the defendant could not be excluded as the possible donor of the sperm.

The defendant testified he called Ms. A. to babysit for him but remembered after he picked her up that his wife didn't like her, so he told her she could either go home or look at duck ponds with him. He denied that Ms. A. ever said she wanted to go home or get out of the truck, or that he had tried to kiss her or make any sexual advances toward her.

The defendant raises two challenges to the sufficiency of the evidence to sustain a conviction of aggravated kidnapping. Aggravated kidnapping is defined by K.S.A. 21-3421 as kidnapping when bodily harm is inflicted on the person kidnapped. K.S.A. 21-3420 defines the crime of kidnapping as follows:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) For ransom, or as a shield or hostage; or

"(b) To facilitate flight or the commission of any crime; or

"(c) To inflict bodily injury or to terrorize the victim or another; or

"(d) To interfere with the performance of any governmental or political function."

The defendant first maintains there was no evidence from which the jury could have concluded the defendant used any "force, threat or deception" on Ms. A. As to the element of deception the appellant contends it ended when the defendant

told her shortly after he picked her up that he didn't want her to babysit and offered to take her home but Ms. A. elected to continue to ride with the appellant in his truck. The appellant further contends the record is barren of any evidence that he used force or threatened to confine Ms. A. in his truck.

In a criminal action where a defendant contends the evidence at trial was insufficient to sustain a conviction, the standard on review is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Peoples*, 227 Kan. 127, 133, 605 P.2d 135 (1980). See also *State v. Williams*, 229 Kan. 290, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981). Count five of the amended information specifically charged the defendant with *confining* Ms. A. by force, threat or deception with the intent to hold her to facilitate the crime of indecent liberties with a minor and to inflict bodily harm upon her. The instruction to the jury on this charge was substantially the same.

Deception is defined in K.S.A. 21-3110(5) as knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact. Here the evidence shows the defendant called Ms. A. and asked her to babysit, but after he picked her up and started driving told her he really didn't need her to babysit and instead wanted her to ride around with him and look at duck ponds. Arguably the deception ended when Ms. A. in the absence of any plausible reason to tell her parents why the defendant didn't need her to babysit after all, elected to continue riding with the defendant. It is not necessary to further pursue this issue, because the defendant was charged with *confining* Ms. A. by force, threat or deception.

Ms. A. testified that after the defendant began to make unwelcome advances toward her while they were still driving around she told him several times she wanted him to take her home, she would walk if he wouldn't take her, and when she tried to get out of the truck he shut the door, preventing her from leaving. Further, when the defendant offered to take her home in exchange for sex, Ms. A. replied she would find her own way home, but because she was unfamiliar with the area was unable to do so. In *State v. Tillery*, 227 Kan. 342, 345, 606 P.2d 1031 (1980), this court noted that kidnapping a child may be accomplished by

using minimal force, each case depending on the particular facts of the taking or confining. Sufficient evidence was presented by the evidence from which the jury could have found the defendant confined Ms. A. by force.

Next, the defendant maintains the evidence was insufficient to support a conviction of aggravated kidnapping separate from the conviction of rape. Relying on *State v. Cabral,* 228 Kan. 741, 619 P.2d 1163 (1980) and *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976), the appellant contends any force or threat used to confine Ms. A. was inherent in the crime of rape and did not make the rape easier to commit or lessen the risk of detection so that the confinement had no significance independent of the rape.

In *Buggs,* the defendant was convicted of rape and kidnapping where he and an accomplice forced the victim and her son to unlock a door and go inside the building they had just left, where the defendant proceeded to rape the victim. This court rejected the defendant's contention that the movement and confinement of the victim was minor, inconsequential and incidental to the real crimes of robbery and rape, stating:

"We therefore construe our statute as requiring no particular distance of removal, nor any particular time or place of confinement. Under our present statute it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." 219 Kan. at 214.

The court discussed the elements necessary to establish kidnapping where a taking or confining occurs to facilitate the commission of another crime, holding:

"We therefore hold that if a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 216.

In *Cabral,* the victim and defendant had been together all evening at a bar and had been riding around for some time together by mutual consent with another couple in the defendant's car. When the defendant began making advances toward her the victim asked to be taken back to where she was staying

with her sister. On the way there the defendant pulled into a park, locked the door, drove behind a tree and raped the victim. The court held:

"When forcible rape occurs in an automobile, of necessity, some confinement of the woman is a necessary part of the force required in the commission of the rape. Such a confinement is of a kind inherent in the nature of forcible rape and incidental to the commission of the rape. Applying the factors set forth in *State v. Buggs,* we have concluded that the evidence presented at the trial was not sufficient to establish the independent crime of aggravated kidnapping and that the defendant should be discharged from the conviction on that charge." 228 Kan. at 744-45.

Numerous facets of the present case distinguish it from *Cabral.* In *Cabral,* the victim and defendant had been together at a bar throughout the evening and later rode around together for some time with another couple before the victim asked to be taken home. The rape occurred when the victim was being driven home. Here the victim initially accepted a ride with the defendant only because he called her and deceived her into believing he wanted her to babysit. Upon learning this was not true the victim continued to ride with the appellant because of the lack of a plausible explanation for her parents.

Contrary to the situation in *Cabral,* Ms. A. was alone with the defendant in his truck for the entire evening. When it began to get dark and Ms. A. became frightened, the defendant repeatedly refused her requests to take her home unless she could direct the way or have sex with him, and physically prevented her from getting out of the truck and walking home. After this had been going on for some time the defendant stopped the truck and forced Ms. A. to take her clothes off by threatening her with a knife. He then raped her. Unlike the victim in *Cabral,* it cannot be said Ms. A. was a willing companion of the defendant for the entire time prior to the rape.

Applying the factors set forth in *Buggs* the conduct of the defendant constituted the independent crime of aggravated kidnapping. The confinement was not slight, inconsequential or merely incidental to the crime of rape. Ms. A. was with the defendant in his truck for four hours, during which it became dark, and the appellant drove around in a rural isolated area which was unfamiliar to Ms. A. Much of this time she tried to convince him to take her home. Four hours of driving the victim around against her will cannot be said to be slight or incidental to

the other crime. Similarly, the length of the confinement involved here was not inherent in the facilitation of the rape. Finally, by driving Ms. A. to a rural road in an isolated area of the county the defendant substantially reduced the risk of detection. Here there was a confinement to facilitate the commission of the crime of rape.

The defendant next contends the offense of indecent liberties with a child is not a crime of "bodily harm" which will support a conviction of aggravated kidnapping. The appellant has confused the element of holding the victim with the intent to facilitate the commission of a crime necessary to prove kidnapping under K.S.A. 21-3420(*b*) with the additional element of bodily harm required under 21-3421 which distinguishes aggravated kidnapping from simple kidnapping. To establish the underlying crime of kidnapping the State charged that the defendant confined Ms. A. with force, threat or deception, with the intent to hold her to facilitate the crime of indecent liberties with a child as defined by K.S.A. 21-3503. The defendant contends that because proof of force is not necessary to establish the crime of indecent liberties with a child a conviction of aggravated kidnapping cannot be sustained. However, there is no requirement in K.S.A. 21-3420 that the crime used by the State to support the charge of kidnapping must include the element of force or bodily harm. In *State v. Tillery*, 227 Kan. 342, the crime of indecent liberties with a child was used to support a charge of simple kidnapping.

To establish the crime of aggravated kidnapping, the State was required to prove the defendant had inflicted bodily harm upon Ms. A., in addition to confining her with intent to facilitate the commission of the crime of indecent liberties with a child. In numerous cases we have held that rape, nonconsensual intercourse with a woman accomplished by overcoming her resistence by force or fear, constitutes sufficient bodily harm to support a conviction of aggravated kidnapping. *State v. Barry*, 216 Kan. 609, 533 P.2d 1308 (1974); *Sharp v. State*, 203 Kan. 937, 457 P.2d 14 (1969); *State v. Ayers*, 198 Kan. 467, 426 P.2d 21 (1967); *State v. Brown*, 181 Kan. 375, 389, 312 P.2d 832 (1957).

In addition to the crimes of indecent liberties with a child and aggravated kidnapping, the defendant was charged and convicted of rape. The jury was instructed that rape, if proven,

constituted bodily harm as an element of aggravated kidnapping. The proof of rape was sufficient evidence of bodily harm to support the conviction of aggravated kidnapping.

The defendant next argues the crime of indecent liberties with a child is a lesser included offense of the crime of rape and therefore the two charges are multiplicitous and constitute double jeopardy. K.S.A. 21-3107(2) provides:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following: (a) A lesser degree of the same crime;

"(b) An attempt to commit the crime charged;

"(c) An attempt to commit a lesser degree of the crime charged; or

"(d) A crime necessarily proved if the crime charged were proved."

In *State v. Arnold,* 223 Kan. 715, 717, 576 P.2d 651 (1978), it was held an offense is considered a lesser included offense under K.S.A. 21-3107(2)(d) when all elements necessary to prove the lesser offense are present and required to establish the elements of the greater offense charged.

In *Jarrell v. State,* 212 Kan. 171, 510 P.2d 127 (1973), the defendant was charged with rape, assault with felonious intent, and taking a woman for defilement, all based on one act of violence on one woman. The court held the charges constituted double jeopardy and reversed all but the rape conviction, stating:

"Two or more separate convictions cannot be carved out of one criminal delinquency and where numerous charges are made, those which make up an integral part of another crime charged, in which the defendant was convicted, must be dismissed as duplicitous." 212 Kan. at 173.

The court held that the test for duplicity is whether each of the offenses charged requires proof of an additional element of the crime which the other does not, and if an additional fact is required, the offenses are not duplicitous. 212 Kan. at 175. See also *State v. Garnes,* 229 Kan. 368, 373, 624 P.2d 448 (1981); *State v. Dorsey,* 224 Kan. 152, 155, 578 P.2d 261 (1978); *State v. James,* 216 Kan. 235, 238, 531 P.2d 70 (1975); *State v. Cory,* 211 Kan. 528, 530, 506 P.2d 1115 (1973).

To establish the crime of rape under K.S.A. 21-3502(1)(a) the State must prove the defendant had sexual intercourse with a woman not his wife and without her consent, which was committed by overcoming the woman's resistance by force or fear. Rape is a class B felony. The elements of indecent liberties with a child are set forth in K.S.A. 21-3503(1):

"Indecent liberties with a child is engaging in either of the following acts with a child under the age of sixteen (16) years who is not the spouse of the offender:

"(a) The act of sexual intercourse;

"(b) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both."

This statute replaced the previous offense of statutory rape in K.S.A. 21-424 (Corrick). The defendant was charged with committing the crime of indecent liberties with a child by having sexual intercourse with Ms. A., who was under sixteen years old and not his spouse. Indecent liberties is a class C felony.

Indecent liberties with a child is a crime "necessarily proved if the crime charged were proved" under 21-3107(2)(d). When a man forcibly rapes a girl under sixteen years of age he has by that one act committed both rape and indecent liberties with a child. In *State v. Lilley*, 231 Kan. 694, 696, 647 P.2d 1323 (1982), this court stated that "[i]ndecent liberties with a child could in some cases constitute a lesser included offense of rape." In that case the defendant raped a fourteen-month-old girl. The court held that an instruction on the lesser included offense of indecent liberties with a child was properly refused by the trial court because the age of the victim prevented her consent and thus no evidence of the lesser offense could have been offered.

The State points to *State v. Nichols*, 212 Kan. 814, 512 P.2d 329 (1973) (indecent liberties with a child and rape), and *People v. Davis*, 10 Ill. 2d 430, 140 N.E.2d 675, *cert. denied* 355 U.S. 820 (1957) (rape and statutory rape), in support of its position that charges of rape and indecent liberties with a child arising out of one incident are permissible. While the convictions of these crimes were upheld on appeal, the issue of multiplicity was not raised or addressed by the court in either case.

Under all of the facts and circumstances in the present case the crime of indecent liberties with a child was necessarily proved when the evidence presented by the State established that the defendant forcibly raped Ms. A., who was under sixteen years of age. Indecent liberties with a child was therefore a lesser included crime under K.S.A. 21-3107(2)(d). The evidence here would support a conviction of either, but not both. The defendant argues under K.S.A. 21-3108 and 21-3109 the rape conviction must be set aside. K.S.A. 21-3109 provides in part that where

there is a reasonable doubt as to which of two or more degrees of an offense a defendant is guilty he may be convicted of the lowest degree only. Under K.S.A. 21-3108(1)(*c*) a conviction of an included offense is an acquittal of the offense charged. Here both crimes were charged and the jury was fully instructed concerning indecent liberties with a child and rape. The defendant was found guilty of both. There is no doubt the jury found the defendant guilty of the more serious crime of rape. In *Jarrell v. State*, 212 Kan. at 175, this court said conviction of forcible rape precludes conviction of the lesser included offense. See also *State v. Garnes*, 229 Kan. at 374 (dismissing conviction of less serious crime). In this case the crime of indecent liberties with a child was a lesser included offense of forcible rape, and K.S.A. 21-3107(2) bars conviction of indecent liberties with a child.

As his final point on appeal the defendant contends the trial court abused its discretion in sentencing him. The defendant was sentenced to life for aggravated kidnapping, fifteen years to life for rape and five to twenty years for indecent liberties, all sentences to run consecutively. These sentences were the maximum statutory limits set forth in K.S.A. 21-4501. Since the conviction for indecent liberties with a child has been set aside, we are only concerned with the consecutive sentences for aggravated kidnapping and rape.

Prior to the sentencing of the defendant the State moved to invoke the Habitual Criminal Act, based upon two prior felony convictions of theft. The court denied the motion because the State failed to produce evidence on identification of the defendant necessary under the Act. The court then reviewed in detail the criteria in K.S.A. 21-4606 for setting minimum terms:

"(a) '[T]he defendant's history of prior criminal activity.' The pre-sentence report would indicate several felony convictions. I can't use them for Enhancement under the Habitual Criminal Act because the County Attorney failed to produce the identification and evidence necessary for those purposes. Nonetheless, there is an indication of prior criminal activity from this defendant.

"(b) 'The extent of the harm caused by the Defendant's criminal conduct.' I would think in this day and age there would be very few people that would [*sic* (not)] acknowledge that the effect of a forcible rape on a 15 year old girl has potential for great psychological scarring, whether there is any physical harm or not. And, in particular the pre-sentence report indicates that [because] of the attitude of the community in Dighton, Kansas, this young lady and her parents have had to leave their home and move to another area where the defendant's criminal activities and impact on her family are unknown. Considerable harm obviously was caused.

"(c) 'Whether the defendant intended that his criminal conduct would cause or threaten serious harm.' The evidence believed by the jury was that the defendant threatened this young lady with a knife at her throat. Obviously that is an intentional act and obviously that is a threat of serious harm.

"(d) 'The degree of the defendant's provocation.' There is no evidence that this young lady provoked the defendant in any way, shape or form. As a matter of fact, his position is that they had no sexual intercourse at all, not even consensual. But, all the lab tests refute that.

"(e) 'Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.' I find none.

"(f) 'Whether the victim of the defendant's criminal conduct induced or facilitated its commission.' I find that she didn't.

"(g) 'Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that she sustained.' Again I think in addition most of us would recognize that this man's conviction could not in any conceivable way compensate this rape victim for the emotional scarring."

The court then indicated it could find no justification for sentencing the defendant to anything less than the maximum provided by the statute.

The defendant argues that because the prior convictions were for nonviolent crimes, there was no physical injury to the victim, and only one act of sexual intercourse took place, the trial court abused its discretion by imposing maximum sentences and ordering them to run consecutively.

K.S.A. 21-4608 grants the trial court discretion in determining whether separate sentences imposed on a defendant on the same date shall run concurrently or consecutively. It is a long standing rule in Kansas that this court will not disturb a sentence imposed by a trial court on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression or corrupt motive. *State v. Words*, 226 Kan. 59, 67, 596 P.2d 129 (1979); *State v. Buckner*, 223 Kan. 138, 150, 574 P.2d 918 (1977). It is necessary the complaining party show vindictive or retaliatory motives, or that judicial discretion was abused, to successfully attack the penalty imposed. *State v. Words*, 226 Kan. at 67; *State v. Eaton*, 213 Kan. 86, 89, 515 P.2d 807 (1973).

K.S.A. 21-4606 sets forth certain criteria which are to be considered in setting the minimum term to be assessed in any particular sentence. In *State v. Buckner*, 223 Kan. at 151, this court stated:

"[W]e feel that when the sentence exceeds the minimum, it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the trial court has abused its discretion."

In this case the trial court fully complied with the statute and the direction of this court in *Buckner*. There is no showing by the appellant that the sentences imposed by the trial court were arbitrary or the result of any ill will toward the defendant or an impure motive. The trial court believed under the circumstances that a less serious sentence was not justified. This is not a situation where the sentence imposed was disproportionate to that of a codefendant or accomplice, see *State v. Reeves*, 232 Kan. 143, 652 P.2d 713 (1982), *State v. Goering*, 225 Kan. 755, 594 P.2d 194 (1979), or the sentence was so inconsistent in comparison to the attending circumstances and evidence introduced at the sentencing hearing as to amount to an abuse of discretion. See *State v. Buckner*, 223 Kan. 138. Imposition of two or more maximum consecutive sentences have been upheld in numerous cases. See, *e.g., State v. Case*, 228 Kan. 733, 739-40, 620 P.2d 821 (1980); *State v. Bradley*, 215 Kan. 642, 648, 527 P.2d 988 (1974). The sentences imposed, while lengthy, are within the limits set by the statute and there is no evidence the trial court abused its discretion.

The defendant also contends the court's consideration of the statement contained in the presentence report concerning the family of Ms. A. moving out of town was improper in that the report was hearsay and was not corroborated by any testimony. The making and use of presentence reports by sentencing courts is expressly authorized by statute. See K.S.A. 21-4601, 21-4603 through -4605. Further, the defendant did not object to the use of this report or this specific statement contained therein, although he was allowed an opportunity to do so. The consideration of this factor by the court while reviewing the criteria in 21-4606 was entirely proper.

The judgment of the lower court is affirmed in part and reversed in part.