No. 66,737

State of Kansas, *Appellee,* v. Glenn Cahill, *Appellant.*

(845 P.2d 624)

Opinion filed January 22, 1993.

*Hazel Haupt,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Frank E. Kohl,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Glenn Cahill appeals his jury trial convictions of attempted rape (K.S.A. 1991 Supp. 21-3301; K.S.A. 21-3502) and aggravated criminal sodomy (K.S.A. 21-3506).

The facts may be summarized as follows. Late on the evening of August 18, 1989, defendant arrived at the home of Jan W. in Leavenworth. Defendant and Ms. W. had been seeing each other socially. Defendant was wearing a black shirt and jeans and had been drinking. Ms. W. was not at home, but defendant remained and talked to her two daughters, 16-year-old Jennifer and 11-year-old J. W. Defendant invited the girls to eat dinner at a restaurant where their father worked. The three drove around a while talking, with most of the conversation being about Ms. W. They returned home. Jennifer was tired and went into the house, leaving J.W. sitting outside talking to defendant. Jennifer said she would come back in 15 minutes if J.W. had not entered the house. Jennifer talked on the telephone a while. When she went back outside, J.W. and the defendant were gone.

J.W. testified defendant wanted to talk further about Ms. W. Defendant and J.W. walked to his home where he picked up a beer. He then told J.W. he wanted to go to a wooded area and smoke marijuana. J.W. accompanied defendant into the woods where he smoked marijuana and urged J.W. to join him in smoking. She refused. J.W. testified defendant then pushed her down and told her to take off her clothes. Defendant told her he would cut her throat if she did not do as he said. J.W. did not see a knife, but believed defendant had one and was very frightened.

Defendant then began fondling J.W. and made her perform oral sex on him. Defendant then attempted sexual intercourse. At this point in time, an individual by the name of Cliff Carson ran by carrying a fire extinguisher. His attention was caught by what he thought was a "noisy log," and he sprayed the same with his fire extinguisher. Startled; Carson realized this "log" was a man in dark clothes and ran away. Two acquaintances of Carson's were running a short distance behind Carson. One of these men was Mark Sedlock, who testified that the man who had been sprayed with the fire extinguisher was the defendant, that defendant appeared to be attempting to shield a child or a small woman from view, and that this female person was trying to get dressed. Sedlock and his companion ran on through the woods. No explanation has been given as to why the three men in the fire extinguisher group were running through the woods.

J.W. testified that after she and Cahill were squirted with the fire extinguisher, defendant told her to get dressed and forced her to accompany him to an area behind defendant's house. Defendant then again attempted sexual intercourse and oral sex. Defendant warned J.W. that if she said anything about the night's events, he would kill her. She started running home.

Meanwhile, Ms. W. had contacted the Leavenworth Police Department about her missing daughter. The officer that found J.W. testified she was crying and screaming. Cahill was arrested shortly thereafter. He was wearing a dark shirt and jeans. His clothing was dirty and wet with grass and weeds stuck thereto. Defendant was tried for and convicted of aggravated criminal sodomy and attempted rape. He appeals therefrom.

## LESSER INCLUDED OFFENSE

For his first issue, defendant contends the trial court erred in failing to instruct the jury on attempted indecent liberties with a child as a lesser included offense. K.S.A. 1991 Supp. 21-3301; K.S.A. 1991 Supp. 21-3503.

A trial court has an affirmative duty to instruct the jury on all lesser included offenses established by the evidence. An instruction on a lesser included offense must be given even though the evidence supporting the lesser included offense may not be strong or extensive. *State v. Stallings*, 246 Kan. 642, 648, 792 P.2d 1013

(1990). An instruction on a lesser included offense must be given if the evidence might reasonably cause a jury to convict a defendant of the lesser offense. *State v. Sutherland*, 248 Kan. 96, 101, 804 P.2d 970 (1991).

In support of his position herein, defendant relies heavily on *State v. Coberly*, 233 Kan. 100, Syl. ¶ 4, 661 P.2d 383 (1983), wherein we held:

"Under K.S.A. 21-3107(2)(d) the crime of indecent liberties with a child is a lesser included offense of rape where the evidence presented by the State establishes that the defendant forcibly raped a female under sixteen years of age."

This reliance is misplaced. In *Coberly* defendant was charged with and convicted of both indecent liberties with a child and rape for a single act. The issue in *Coberly* was multiplicity. The statute (K.S.A. 21-3107[2][d]) cited in the quoted syllabus paragraph is the statute defining multiplicity. Multiplicity is not an issue herein.

This issue is controlled by *State v. Lilley*, 231 Kan. 694, 647 P.2d 1323 (1982). In *Lilley*, defendant was convicted of the rape of a 14-month-old girl. He argued it was error for the court not to have instructed on indecent liberties with a child as a lesser included offense of rape. In rejecting this argument, we stated:

"The elements of rape are set out in K.S.A. 21-3502(1):

'Rape is the act of sexual intercourse committed by a man with a woman not his wife, and without her consent when committed under any of the following circumstances:

'(a) When a woman's resistance is overcome by force or fear; or

'(b) When the woman is unconscious or physically powerless to resist; or

'(c) When the woman is incapable of giving her consent because of mental deficiency or disease, which condition was known by the man or was reasonably apparent to him; or

'(d) When the woman's resistance is prevented by the effect of any alcoholic liquor, narcotic, drug or other substance administered to the woman by the man or another for the purpose of preventing the woman's resistance, unless the woman voluntarily consumes or allows the administration of the substance with the knowledge of its nature.'

"Since K.S.A. 21-3501 defines 'woman' as 'any female human being' rape was obviously a proper charge in this case. This section replaced the previous offense of forcible rape while K.S.A. 21-3503 replaced statutory rape. Lilley could have been charged with either offense. The State properly chose to charge him with the former.

"K.S.A. 21-3503(1) states:

'Indecent liberties with a child is engaging in either of the following acts with a child under the age of sixteen (16) years who is not the spouse of the offender:

'(a) The act of sexual intercourse;

'(b) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both.'

"Indecent liberties with a child could in some cases constitute a lesser included offense of rape. The trial court's duty to instruct on lesser included crimes is governed by K.S.A. 21-3107(3), and that duty arises only when there is evidence under which the defendant might have reasonably been convicted of the lesser offense. *State v. Staab*, 230 Kan. 329, 339, 635 P.2d 257 (1981). Here the age of the victim prevented her consent. Thus, under these circumstances no evidence of the lesser offense could have been offered. As such the trial court properly refused to give the instruction." 231 Kan. at 696-97.

Note: The rape statute's requirement that it does not apply to nonconsensual sexual intercourse between husband and wife was removed by a 1983 amendment (L. 1983, ch 109, § 2, effective July 1, 1983).

Thus, indecent liberties is a lesser offense of rape only where there is an issue as to consent. The victim testified her resistance was overcome by force and fear. The defendant denied any sexual activities occurred between himself and J.W. Thus, there was no evidence of attempted indecent liberties. The crime was attempted rape, of which defendant could have been found guilty if the victim and the corroborating evidence were believed, or not guilty if the defendant's testimony were believed. We find no error in the trial court's failure to instruct on attempted indecent liberties as a lesser included offense of attempted rape.

## REFUSAL TO GRANT A MISTRIAL

For his next issue, defendant contends the trial court abused its discretion when it denied defendant's motions for a mistrial. Defendant contends three trial incidents warranted the declaration of a mistrial. Each will be discussed in turn. First, however, the applicable rules need to be stated.

K.S.A. 22-3423 provides:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

. . . .

(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution."

Declaration of a mistrial is a matter entrusted to the trial court's discretion and will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Mayberry*, 248 Kan. 369, Syl. ¶ 8, 807 P.2d 86 (1991).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Martin*, 237 Kan. 285, Syl. ¶ 2, 699 P.2d 486 (1985).

The first complained-of incident occurred during the testimony of Cliff Carson. This is the individual who sprayed the fire extinguisher. Carson was called as a witness for the State and testified on direct examination as to what he did and what he saw in the woods that night relative to the charges herein. On cross-examination by defense counsel, inquiry was made as to how Carson had become involved in the case. The following colloquy took place:

"Q. How did you first get contacted about this whole thing?
"A. Contacted?
"Q. Yes. About that evening, who approached . . . you about the fire extinguisher, spraying the alleged assailant, etc.?
"A. [H]is name is Robert. He works at the prison.
"Q. Robert? ·
"A. Yeah, I can't remember his last name. Cannon is his last name. He had come to me at my now wife's house. At the time it was my girlfriend. He said somebody had squirted Cahill. He said Glenn Cahill. He said his name. And said somebody squirted him. He had been on parole for two weeks and he raped a little girl.
         "MR. FARMER: That is all, your Honor."

Following redirect examination, the jury was excused for the day, whereupon defense counsel moved for a mistrial based upon the claimed prejudicial effect of the reference to defendant having been out of prison two weeks and having raped a little girl. The trial court denied the motion, reasoning that the answer was in

response to a question by defense counsel during cross-examination and had not been induced by the prosecution.

We agree. Defense counsel obviously was wanting to know what made the witness relate the occurrence in the woods to the criminal charges herein. The witness was explaining what had transpired in that regard.

An additional appellate complaint relative to this incident is made concerning the trial court's failure to admonish the jury as to the witness' complained-of response. A review of the record indicates no such admonition was requested. The trial court, in denying the motion for a mistrial, stated:

"And the thing about it is, though, if I would have told the jury at that particular time to disregard it, it probably would have emphasized it more and so forth.

"Now, I could put it in the Instructions at the end of the case that they are not to take into account anything other than this particular charge and anything else that might have been stated in the trial, but, here again, that might emphasize it too.

"MR. FARMER [defense counsel]: Yes. Well, —

"THE COURT: So I just let it go, you see, instead of trying to say anything further because, basically, other than that, the jury didn't know."

Clearly, defense counsel was agreeing with the trial court's rationale for not giving an admonition or limiting instruction. It would be improper to entertain a claim of abuse of judicial discretion made for the first time on appeal in such circumstances.

The second complained-of incident occurred on the first day of trial. A heavy presence of armed and uniformed law enforcement officers was in the courtroom. When defense counsel complained about this, the trial court agreed and imposed restrictions. Defendant contends that the limitations came too late as he had already been deprived of a fair trial.

In *State v. Myrick & Nelms*, 228 Kan. 406, 616 P.2d 1066 (1980), complaint was made over the large amount of security present throughout the trial. We held:

"The basic principle involved is an accused's right to the presumption of innocence until guilt is proved beyond a reasonable doubt; however, the accused's rights must be balanced with the duty of the trial judge to protect the lives of the trial participants and to protect the institution of the judicial process. . . .

". . . From this distance, it would be easy to find security was overdone, but placing ourselves in the position of the trial judge at that time and place, we find it a proper exercise of the court's power to take the security measures necessary to protect the parties and the judicial process. The balancing of the competing interests lies within the discretion of the trial judge, for it is he who is best equipped to decide which security measures should be adopted. [Citations omitted.] No demonstrable prejudice to appellants was shown. The issue is without merit." 228 Kan. at 418-19.

In the State's brief, there is reference to an article appearing in the Leavenworth Times wherein defendant was reported to have offered a $5,000 bounty for the deaths of J.W. and Ms. W. prior to their testifying herein. The portion of the record cited to contain the article is not before us. Defendant does not dispute its existence, however.

In the totality of the circumstances herein, including the trial court's prompt remedial action, we find no abuse of judicial discretion in denying the motion for a mistrial which was grounded on the presence of the law enforcement officers.

For his final point on this issue, defendant contends the trial court abused its discretion in denying his motion to excuse the jury panel because: (1) some potential jurors might have seen defendant being brought to the courthouse by Kansas State Penitentiary (KSP) guards (he was an inmate at the time); (2) some potential jurors may have seen defendant in shackles immediately prior to his being brought into the courthouse; and (3) one of the jury panel was recognized by the defendant as being a KSP guard and who was seen conversing with escorting KSP guards. The court excused the KSP guard who was on the jury panel before voir dire. At the close of the State's case, the defendant asserted, as additional grounds for a mistrial, that the potential juror who was a guard had stated in a loud voice to the guards who were escorting defendant that he could not serve as a juror because he was a KSP guard and Cahill was an inmate therein. Just where this was alleged to have occurred and whether any prospective jurors might have been in a position to overhear same is unclear.

The trial court held that defendant's right to a fair trial had not been violated. Applying the rules previously stated herein, we find that no clear showing of abuse of judicial discretion has

been shown in any of the complained-of particulars within this issue.

## LIMITATION ON CROSS-EXAMINATION OF WITNESSES

For his next issue on appeal, defendant contends the trial court abused its discretion in improperly limiting his cross-examination of Cliff Carson and Mark Sedlock.

Defendant's theory of defense needs to be stated in some detail to bring this issue into proper perspective. Defendant is a large man weighing about 300 pounds. He had undergone surgery on a number of occasions, including a relatively recent knee replacement. He argued he could not have raised himself from the ground as easily as was described by the fire extinguisher witnesses (Carson and Sedlock). He testified the dirt, grass, and wetness on his clothing observed at the time of arrest came from working on a motor vehicle.

Defendant testified Ms. W. was angry with him because he was seeing other women. He further testified Ms. W. was a drug dealer who was angry with him because he had stolen some of her stock in trade. Further, Ms. W. sent two of her customers (Sedlock and Carson) over to defendant's residence on the night in question to collect the stolen cocaine. When defendant did not return the cocaine, Sedlock and Carson squirted him and his dog with a fire extinguisher they were carrying and then left the premises. Defendant's position was that Ms. W.'s anger with him caused her to invent the story of sexual crimes against her daughter, J.W., and to cause J.W., Jennifer, Sedlock, and Carson to testify falsely to incriminate defendant.

The limitation on cross-examination came when defense counsel asked Carson and Sedlock if they had ever purchased cocaine from Ms. W. The trial court held the questions were not relevant. In his opening statement, defense counsel concentrated on Ms. W. being angry with defendant over his seeing other women and having taken some cocaine from her house. He stated the evidence would show Ms. W. put her daughter up to making false accusations. There was no intimation Carson or Sedlock were in on Ms. W.'s plan of revenge or even knew her. The questions to Carson and Sedlock about prior drug purchases from Ms. W. came in the State's case in chief. There was no argument made

to the court that such questions were a part of a defense theory that Ms. W. was their drug purveyor and that she had induced them to testify falsely. Mention of Sedlock and Carson being drug-motivated members of the plot for revenge concocted by Ms. W. only comes in through defendant's testimony. In determining whether or not the limitation on cross-examination constituted an abuse of judicial discretion, we must look at the circumstances existing at the time of the complained-of rulings. At that time there was no showing of relevancy. We find no abuse of discretion in the complained-of limitation on cross-examination.

The judgment is affirmed.