No. 101,545

STATE OF KANSAS, *Appellee,* v. JARED RACE, *Appellant.*
(259 P.3d 707)

Opinion filed September 2, 2011.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is a direct appeal from defendant Jared Race's jury convictions on two counts of rape in violation of K.S.A. 21-3502, three counts of aggravated criminal sodomy in violation of K.S.A. 21-3506, and four counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504.

Race raises five issues:

(1)   Whether the district judge erred by admitting hearsay testimony about one victim's allegation;

(2)   Whether the district judge erred by admitting photographs and computer images of child pornography;

(3)   Whether there was sufficient evidence to support conviction on the second count of rape of one victim;

(4)   Whether the district judge erred by denying Race's motions for mistrial after a juror saw Race in a courtroom hallway while Race was wearing handcuffs and the juror was absent for a part of the deliberations; and

(5)   Whether Race's convictions should be reversed for failure to instruct the jury that it must find that he was 18 years old or older at the time the offenses were committed.

## FACTUAL AND PROCEDURAL BACKGROUND

T.R., born March 26, 1997, is the daughter of Race and L.A.V. After divorcing and living separately for 10 years, Race and L.A.V. reunited in May 2006. In July 2006, Race, L.A.V., T.R., and A.W., L.A.V.'s daughter from an intervening relationship, moved into Race's sister's apartment in Hutchinson, Kansas. In September or October 2006, Race, L.A.V., T.R., A.W. and Race's sister moved into a larger house on 10th Street, also in Hutchinson. About June 15, 2007, Race, L.A.V., T.R., and A.W. moved to a house in Langdon.

On the afternoon of August 2, 2007, Race, L.A.V., and the two girls were in the car when L.A.V. received a call from her sister, T.P. T.P. told L.A.V. that her daughter, J.P., had accused Race of touching her. T.P. said that J.P. had told her grandmother, who then informed T.P. that her "private parts were hurting because Uncle Jared had been rubbing on them."

Upon receiving T.P.'s call, L.A.V. immediately confronted Race, asking him whether he had molested J.P. Race denied the accusations.

According to L.A.V., on arrival at the Langdon house, T.R. said, "[D]ad, why are you telling mom that you're not doing that? You do that to me and [A.W.]. You touch my private parts." A.W. then also said that Race had touched her "private parts." L.A.V. sent the girls to their separate bedrooms. Then she spoke to each individually about what happened with Race. T.R. told L.A.V. that Race had touched her in her private parts, forced her to take showers with him, and put his private part in hers. A.W. told her that Race had touched her private parts with his private parts, put his mouth on her private parts, and made her take a shower with him. T.R. and A.W. also told her that they had witnessed sexual activities between Race and J.P. and between Race and C.C., the daughter of L.A.V.'s friend, T.C. In addition, A.W. told L.A.V. that Race had photographed her.

Race's version of events that day at the Langdon house differs from L.A.V.'s. He testified that L.A.V. sent both girls to T.R.'s room while she and Race continued to argue about the accusations. The argument continued until A.W. came downstairs. A.W. told her mother, "[T.R.] wants me to tell you that me and her are both being touched and by [Race], the same way." At that point, L.A.V., Race, and A.W. went to T.R.'s room, where T.R. accused Race of touching her.

Shortly after these events, Race left the Langdon house and went to Oklahoma.

After Race left, L.A.V. contacted police and several officers came to the house. L.A.V. provided them with a desktop computer, several computer disks, 10 photographs, and a digital camera. L.A.V. had found the 10 photos in a bathroom, above a cabinet. The pho-

tographs were pornographic images of children but did not depict T.R., A.W., J.P., or C.C.

Race was arrested in Oklahoma within a week. The formal complaint filed against him in November in Reno County charged 15 total counts—including rape, aggravated criminal sodomy, and aggravated indecent liberties with a child—each count involving one of the four girls.

During Race's preliminary hearing, 7-year-old J.P. attempted to take the stand but, while being sworn, became too fearful to testify. T.R., A.W., and C.C. all testified about the acts they saw Race commit against J.P. and his molestation of them.

Race filed a pretrial motion in limine to prevent the State from asking questions or making references at trial to his criminal record or any uncharged crimes. The district judge granted Race's motion.

At trial, L.A.V. testified about T.P.'s telephone call to her and the events that followed. When she described T.P.'s statement to her about J.P.'s allegation, Race made a hearsay objection. The district judge overruled the objection and explained the ruling to the jury:

"THE COURT: I will overrule the hearsay objection with the proviso to the jury, the answer to this question is to be considered by you to explain why this witness took the action that she took, and not for the truth of the matters of, that were stated to her. Perhaps make that clearer, she's, she, the witness has been asked to relate what she was told by another individual. I'm going to allow that statement to allow you to, to understand why this witness took the action she did, not necessarily what she was told was true or not."

L.A.V. also testified about when and where she found the 10 photographs. The State asked the district judge to admit the photographs and publish them to the jury, and Race did not object. L.A.V. also said that A.W. had told her that Race took photographs of her and T.R.

Each of the girls, with the exception of J.P., whom the State did not call, testified at trial.

T.R., age 11 at trial, testified that Race touched her private parts when she was 9 or 10 years old. T.R. described Race touching her in three locations: her aunt's apartment, the house on 10th Street, and the house in Langdon. She said Race rubbed her private part

on the inside of her clothing, made her touch him on his private part with her hand, touched her private part with his tongue, and made her touch him on his private part with her tongue. T.R. also testified that she saw Race rub A.W.'s and J.P.'s private parts with his finger, the same way he had touched T.R.

A.W. testified that Race touched her private parts when she was 5 years old; she was 6 at the time of trial. A.W. described Race touching her on the inside of her "front" private part with his finger at her aunt's apartment and at the house in Langdon. She also described Race touching her "back" private part with his finger and putting his mouth on her "front" private part. She also testified that she watched T.R. suck on Race's "weenie," and saw Race touch J.P. and C.C. the same way he had touched A.W.

C.C. was 7 years old at the time of trial. She testified that Race touched her on her private part with his hands on the outside of her clothes. She stated that, when Race touched her, he also touched T.R. and A.W.

T.P. testified about the allegation made by her daughter, J.P. She corroborated L.A.V.'s account of the telephone call. She also testified that, some time after the call, Race contacted her to say that he had never touched J.P.

In addition to the testimony of L.A.V., three of the four girls, and T.P., the State presented testimony from Detective Sheldon Stewart of the Reno County Sheriff's Office. Stewart testified that he found hundreds of images of child nudity and pornography on Race's computer, using software called iLook. Stewart printed 15 to 25 sample images and brought them to trial. When the State moved to admit the printed images, Race lodged a hearsay objection because of the use of the software to obtain the images from the computer. The district judge overruled the objection and admitted the printed images.

Race testified during his direct examination that he was 30 years old—born February 5, 1978—and he denied touching T.R., A.W., J.P., and C.C. The defense theory was that all of the girls' allegations were the product of a conspiracy among their mothers, "women scorned." The women were angry, because in addition to

Race's episodic romantic relationship with L.A.V., he had had affairs with T.P. and T.C., C.C.'s mother.

The defense also presented testimony from Detective Diana Skomal. Skomal testified that there was not much forensic evidence in this case and that all of the victims had denied that Race took photographs of them.

The instructions given to Race's jury by the district judge did not include Race's age of 18 or over at the time of the offenses as an element of the crimes. There was no defense objection on this point.

Race's jury retired to deliberate at 4:30 p.m. on July 10, 2008. Before excusing the jury for the night, the district judge instructed jurors, "If some of you get there before others in the morning do not talk about the case till all 12 of you are there." In addition, on the following day, before excusing the jury for lunch, the judge said, "Do not deliberate in any fashion. That can only be done with the 12 of you sequestered in the jury."

On the afternoon of July 11, the State informed the district judge that one of the jurors may have seen Race in the hallway after the lunch break as officers transferred Race in handcuffs. The judge considered whether he should bring the full jury into court to ask if anyone had had any contact with any of the parties; dismiss the juror who saw Race; or question the juror who saw Race to determine what he saw and whether he told the rest of the jury anything about it. Ultimately, the district judge summoned the juror from the room where the jury was deliberating and interviewed him. The juror confirmed that he had seen Race in the hallway, but he said he had not noticed anything in particular about him. Also, the juror had not talked to any of the other members of the jury about what had occurred. The judge instructed the juror to refrain from discussing the matter with the other members of the jury and then sent the juror back into the room where the jury was deliberating.

Race argued that the judge should declare a mistrial because the juror had seen Race in handcuffs. After interviewing the juror, the judge determined that no prejudice to Race had occurred and denied the mistrial motion. Race later moved for mistrial because the juror had been absent from the room in which the jury was delib-

erating for a period of time. The district judge also denied this motion, describing the juror as an "alternate" and saying that he had been out of the deliberations room for only 2 minutes.

The jury reached its verdict at 1:45 p.m. on July 11. Race was found guilty of two counts of rape of A.W.; three counts of aggravated criminal sodomy with T.R. and A.W.; and four counts of aggravated indecent liberties with a child, one count for each of the four girls.

## DISCUSSION

### Admission of Testimony About J.P.'s Allegation

Race argues that T.P.'s testimony about J.P.'s allegation was inadmissible hearsay.

Race did not lodge a hearsay objection to this testimony during trial, and normally that would impede this court's evaluation of the merits of this claim. See K.S.A. 60-404; *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) (contemporaneous objection rule requires party to make specific, timely objection at trial to preserve evidentiary issue for appeal); *State v. Fisher*, 222 Kan. 76, 84, 563 P.2d 1012 (1977) (same). Here, we are persuaded to make a substantive, though not a procedural, exception to our ordinary demand for contemporaneous objection, because Race did make an unsuccessful hearsay objection to earlier testimony from L.A.V. having to do with J.P.'s allegation.

L.A.V. explained to the jury how the cascade of accusations against Race began—starting with the phone call to her from T.P. while L.A.V. was riding in the car with Race, T.R., and A.W. This meant that L.A.V. related T.P.'s statement that J.P had told her grandmother about her private parts hurting because Race rubbed on them. This is the testimony that drew the hearsay objection from Race. The district judge overruled the objection, instructing the jury that this part of L.A.V.'s story was to be considered only to explain why she took the actions she took and not for the truth of the statement T.P. made to her.

Like many evidentiary determinations considered on appeal, an appellate court reviews a trial court's admission or exclusion of hearsay statements for an abuse of discretion. *State v. Miller*, 284

Kan. 682, 708, 163 P.3d 267 (2007). " ' "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." ' " *State v. Murray*, 285 Kan. 503, 530, 174 P.3d 407 (2008) (quoting *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 [2005]).

K.S.A. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Out-of-court statements that are not offered to prove the truth of the matter stated are not hearsay under K.S.A. 60-460. See *State v. Becker*, 290 Kan. 842, 846, 235 P.3d 424 (2010). "The theory behind the hearsay rule is that when a statement is offered as evidence of the truth of the matter stated, the credibility of the declarant is the basis for its reliability, and the declarant must therefore be subject to cross-examination." *Becker*, 290 Kan. at 846 (citing *State v. Boldridge*, 289 Kan. 618, 634, 215 P.3d 585 [2009]).

If a statement is offered not to prove the truth of the matter asserted but to prove that the statement was made, it is not hearsay. *State v. Harris*, 259 Kan. 689, 698, 915 P.2d 758 (1996). "If relevant, such a statement is admissible through the person who heard it." *Harris*, 259 at 698 (citing *State v. Getz*, 250 Kan. 560, Syl. ¶ 2, 830 P.2d 5 [1992]). We also have held that statements offered into evidence not to prove the truth of the matter asserted but "to show their effect on the listener" do not constitute hearsay. *Becker*, 290 Kan. at 847 (citing *Harris*, 259 Kan. at 699).

In our recent case, *State v. Becker*, the defendant complained of a number of out-of-court statements that came in through the testimony of various witnesses. The statements consisted mainly of threats to individuals such as: " '[T]hey shut the door and said if anybody comes out of here we're going to shoot them,' " and " 'They told me that they were going to be back at 5:00 a.m. and I better have drugs or money or they were going to kill me.' " *Becker*, 290 Kan. at 847. We held that these statements did not constitute hearsay because they were not offered to prove the truth of the matter asserted. It was irrelevant and unnecessary to know whether the defendant would have shot anyone who attempted to leave. *Becker*, 290 Kan. at 847. Rather, the State offered evidence

of the threats to explain why the people who heard the threats remained in the room. *Becker*, 290 Kan. at 847. A statement offered to prove the effect on the listener is admissible through the person who heard it. *State v. Patton*, 280 Kan. 146, 162, 120 P.3d 760 (2005); *Harris*, 259 Kan. at 698.

In this case, at least one of the purposes of offering L.A.V.'s testimony about J.P.'s allegation was to explain her version of the chain of events it launched: L.A.V. immediately confronted Race in the car in the presence of T.R. and A.W.; T.R. then told her mother that Race had touched her and A.W. too; and L.A.V. sent the girls to their rooms and talked to each separately before contacting the police. Whether T.P.'s original statement about what J.P. had told her grandmother was true was irrelevant to this purpose. The fact that the statement was made to L.A.V. and had a particular effect on her as listener were the salient points.

The district judge's timely admonition to the jury emphasized the legitimate purpose of the admission, and we applaud his initiative in giving it. Although the judge might have prudently omitted the word "necessarily" in his final sentence, the admonition was otherwise a perfect prophylactic. It told jurors explicitly that they were not to use L.A.V.'s recitation of J.P.'s allegation as substantive evidence supporting a finding that Race was guilty of aggravated indecent liberties with J.P. We generally presume jurors follow the instructions given them in the district court. See *Becker*, 290 Kan. at 856 (appellate courts presume jury follows instructions).

The district judge did not err in overruling Race's hearsay objection to L.A.V.'s testimony about J.P.'s allegation. Presuming the jurors took the district judge's admonition about the limited purpose of the testimony from L.A.V., they had plenty of eyewitness testimony from T.R. and A.W. to support the aggravated indecent liberties count involving J.P.

*Admission of Evidence of Child Pornography*

Race next challenges the district judge's admission of evidence that he possessed child pornography—that is, the 10 photographs found by L.A.V., the computer images printed by Stewart, and testimony about these items—as impermissible evidence of un-

charged crimes under K.S.A. 60-455. At trial, Race did not object to admission of the 10 photographs found in the Langdon house bathroom at all. He did object to admission of the printed images obtained from his computer by Stewart, but his objection was based on hearsay.

Although Race prevailed on his pretrial motion in limine to exclude evidence of uncharged crimes, his failure to make the correct contemporaneous objection at trial means that he failed to preserve this issue for our review. See K.S.A. 60-404; *State v. Hollingsworth*, 289 Kan. 1250, 1255, 221 P.3d 1122 (2009) (citing *State v. Bryant*, 285 Kan. 970, Syl. ¶ 6, 179 P.3d 1122 [2008]). We do not permit parties to object to the introduction of evidence on one ground at trial and then assert another ground on appeal. See *State v. Richmond*, 289 Kan. 419, Syl. ¶ 4, 212 P.3d 165 (2009).

Race insists that any preservation flaw should be excused because review is necessary to prevent a denial of his fundamental rights. Specifically, he asserts, this evidence was subject to use as proof of his propensity to commit the charged crimes, and its prejudicial effect far outweighed its probative value.

This type of argument has not moved us to jettison our contemporaneous objection rule in past cases. See *State v. Johnson*, 286 Kan. 824, 840, 190 P.3d 207 (2008) (citing *State v. Garcia*, 285 Kan. 1, 18-19, 169 P.3d 1069 [2007]); *State v. Boyd*, 257 Kan. 82, 89, 891 P.2d 358 [1995] (argument on prejudicial effect does not erase need for contemporaneous objection; trial judge in better position than appellate court to evaluate probative value versus prejudicial effect); *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) (citing *Richmond*, 289 Kan. at 429-30; *Hollingsworth*, 289 Kan. at 1256-57; *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009]; *State v. Mays*, 277 Kan. 359, 384-85, 85 P.3d 1208 [2004]) (contemporaneous objection rule exceptions should not be permitted to swallow general statutory rule). And it does not move us to do so here.

*Sufficiency of Evidence of Second Rape of A.W.*

Race also argues that A.W.'s testimony was insufficient to persuade a rational factfinder that more than one act of vaginal penetration occurred.

"When [the] sufficiency of evidence is challenged in a criminal case, our standard of review is whether, after review of all the evidence, examined in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Prine*, 287 Kan. 713, 738, 200 P.3d 1 (2009) (citing *State v. Vasquez*, 287 Kan. 40, 59, 194 P.3d 563 [2008]; *State v. Morton*, 283 Kan. 464, 474, 153 P.3d 532 [2007]). "This court has often stated that the testimony of the victim alone can be sufficient to sustain a rape conviction without further corroboration as long as the evidence is clear and convincing and is not so incredible and improbable as to defy belief." *Prine*, 287 Kan. at 739 (citing *State v. Borthwick*, 255 Kan. 899, 904, 880 P.2d 1261 [1994]; *State v. Cooper*, 252 Kan. 340, 347, 845 P.2d 631 [1993]).

K.S.A. 21-3502(a)(2) defines rape as "sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3501(1) defines "[s]exual intercourse" for purposes of rape to include: "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."

In her trial testimony, A.W. explained that there was an inside and an outside to her front private part and said that, at her aunt's apartment, Race pulled her pants halfway down and rubbed the inside of this private part up and down with his finger. She then testified that this happened again in Langdon; Race had touched her the same way as he had at her aunt's apartment. A.W. also testified that her sister, T.R., saw Race touch her at the Langdon house. T.R.'s testimony confirmed that she had seen Race rub A.W. with his finger at the Langdon house, as well as at her aunt's house and at the 10th Street house.

We have no hesitation in holding that A.W.'s description of the penetration of her vagina at her aunt's home and her statement that the same type of touch occurred in Langdon constituted sufficient evidence to enable a rational factfinder to find Race guilty of the second count of rape. Although not required, T.R.'s eyewitness testimony provided some corroboration of A.W.'s story. Race is not entitled to reversal of his second rape conviction.

*Denial of Motions for Mistrial*

Race next argues that he was entitled to a mistrial declaration because he was seen by a juror while being transported in handcuffs through the courthouse hallway and because the juror was absent from part of the jury's deliberations.

A district judge may declare a mistrial because of "[p]rejudicial conduct, in or outside the courtroom, which makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(1)(c). In applying this statute, we have stated that a district judge must engage in a two-step analysis: (1) determine whether there was some fundamental failure of the proceeding; and (2) if so, determine whether it is possible to continue the trial without an injustice. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011) (citing *State v. White*, 284 Kan. 333, 343, 161 P.3d 208 (2007). The judge must analyze whether the damaging effect of any prejudicial conduct can be removed or mitigated by admonition or instruction to the jury. If that is not possible, and the degree of prejudice would result in an injustice, a mistrial is necessary. *Ward*, 292 Kan. at 550 (citing *White*, 284 Kan. at 343).

On appeal, we review denial of a motion for mistrial under an abuse of discretion standard.

"A district judge may declare a mistrial when prejudicial conduct makes it impossible to proceed with a trial without injustice to the defendant. Declaration of a mistrial is a matter entrusted to the trial court's discretion, and the judge's choice will not be set aside without an abuse of that discretion." *State v. Dixon*, 289 Kan. 46, Syl. ¶ 1, 209 P.3d 675 (2009).

See also *State v. Leaper*, 291 Kan. 89, 96-97, 238 P.3d 266 (2010); *State v. Foster*, 290 Kan. 696, 718, 233 P.3d 265 (2010).

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *Ward*, 292 Kan. at 550 (citing *State v. Gonzalez*, 290 Kan. 747, 755-56, 234 P.3d 1 [2010]).

Our most recent case addressing appellate examination of a mistrial issue, *State v. Ward*, 292 Kan. at 551, divided our abuse of discretion inquiry into two parts:

"(1) Did the trial court abuse its discretion when deciding if there was a fundamental failure in the proceeding? and (2) Did the trial court abuse its discretion when deciding whether the conduct resulted in prejudice that could not be cured or mitigated through jury admonition or instruction, resulting in an injustice?"

"The rubric for analysis of the first question varies with the nature of the alleged misconduct." *Ward*, 292 Kan. at 551. As to whether the conduct resulted in prejudice that could not be cured or mitigated, an appellate court's view may be broader than the trial court's. We will examine the entire record, while a district judge may have had to make an assessment before the end of a trial. *Ward*, 292 Kan. at 551 (citing *State v. Leaper*, 291 Kan. at 96-97; *White*, 284 Kan. at 343-344; K.S.A. 60-2105 [appellate harmless error statute; prejudice caused by error assessed "upon the whole record"]).

*Ward* also synthesized our cases on harmless error analysis, stating:

"[B]efore a Kansas court can declare an error harmless it must determine the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the United States Constitution. If it does, a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict. If a right guaranteed by the United States Constitution is not implicated, a Kansas court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial." *Ward*, 292 Kan. at 565.

A claim arising generally out of a defendant's right to a fair trial is based on the federal constitutional guarantee of due process. We therefore apply the federal constitutional harmless error rule. See *Ward*, 292 Kan. at 564-66. The burden of proof to demonstrate an error was harmless under the federal constitutional rule lies with the party benefitting from the error. That party must prove " 'beyond a reasonable doubt that the error complained of did not [af-

fect substantial rights, meaning it did not] contribute to the verdict obtained.' " *Ward*, 292 Kan. at 568-69 (citing *State v. Kleypas*, 272 Kan. 894, 1084, 40 P.3d 139 [2001], *cert. denied* 537 U.S. 834 [2002]).

Several of our prior cases have discussed the potential for prejudice to defendants who appear before the jury in shackles. See *State v. Davidson*, 264 Kan. 44, 954 P.2d 702 (1998) (error for district judge to tell jury purpose for using leg brace was to prevent escape); *State v. Ninci*, 262 Kan. 21, 936 P.2d 1364 (1997) (many courts believe restraints present unacceptable risk of prejudicial effect); *State v. Alexander*, 240 Kan. 273, 729 P.2d 1126 (1986) (other jurisdictions have held defendant's appearance before jury in shackles harmless, given evidence of defendant's guilt). Generally, we have held that shackling or otherwise restraining a defendant while in the view of the jury is appropriate only in limited circumstances and for particularly dangerous defendants. See *State v. Powell*, 274 Kan. 618, 636, 56 P.3d 189 (2002) (on evidence defendant in capital-murder trial stabbed another inmate, district judge permitted to have defendant wear stun belt during trial); *State v. Williams*, 228 Kan. 723, 728, 621 P.2d 423 (1980) (shackling appropriate when defendant had broken glass door, window after trial began); *State v. Yurk*, 203 Kan. 629, 456 P.2d 11 (1969) (shackles to be used during trial only in unusual, compelling circumstances).

In *State v. Yurk*, the defendant argued that he was deprived of a fair trial because he had to walk through the hallways of the court in shackles, although the handcuffs were removed before he entered the courtroom. *Yurk*, 203 Kan. 629, 456 P.2d 11 (1969). This court acknowledged that "freedom from handcuffs during the trial of a criminal case is an important component of a fair and impartial trial," *Yurk*, 203 Kan. at 631 (citing *Way v. United States*, 285 F.2d 253 [10th Cir. 1960]), but we said that "denial of a motion for a mistrial because defendant had been in a position, during an isolated incident occurring in the hallway of the courthouse, to be observed by the jury while he was wearing handcuffs was not an abuse of discretion." *Yurk*, 203 Kan. at 631 (citing *Glass v. United*

*States*, 351 F.2d 678 [10th Cir. 1965], and *Odell v. Hudspeth*, 189 F.2d 300 [10th Cir. 1951]).

In *State v. Cahill*, 252 Kan. 309, 845 P.2d 624 (1993), the defendant argued that the district judge abused his discretion by denying a motion to excuse the jury because potential jurors may have seen the defendant in shackles immediately before he was brought into the courthouse. We noted that " '[t]he basic principle involved is an accused's right to the presumption of innocence until guilt is proved beyond a reasonable doubt; however, the accused's rights must be balanced with the duty of the trial judge to protect the lives of the trial participants and to protect the institution of the judicial process.' " *Cahill*, 252 Kan. at 315. Under the totality of the circumstances, we saw no abuse of the district judge's discretion. *Cahill*, 252 Kan. at 315.

In *State v. Dixon*, 289 Kan. 46, 209 P.3d 675 (2009), a juror saw the defendant in leg shackles at some point during the defendant's retrial, and the juror told three other jurors about it. The district judge questioned the juror, asking if the incident would " 'in any way affect the manner in which [he] viewed this case' " or " 'cause [him] to feel one way or another for or against [Dixon's] guilt or innocence.' " *Dixon*, 289 Kan. at 53. The juror said, "No," and the judge issued a curative admonition, stating in part,

" 'the manner in which [the defendant] arrives in the courtroom is not a matter that has any bearing whatsoever on this proceeding. It makes no difference. You're to draw no inferences from anything that you have seen or heard, and specifically I'm instructing you to disregard in these further proceedings any information with regard to the mode, mechanism of the transport[,] or the appearance of [the defendant] here in any way. Simply put, it's not appropriate to consider those things.' " *Dixon*, 289 Kan. at 53.

This court held that shackling the defendant "while in transit through a public hallway is entirely different from shackling at the defense table during a jury trial." *Dixon*, 289 Kan. at 61. We also noted that the juror may not have seen anything at all, only heard what he believed to be shackles. And the juror denied that "the experience would affect his impartial decision making." *Dixon*, 289 Kan. at 62. Under these circumstances, we saw no abuse of discretion in denying a mistrial. *Dixon*, 289 Kan. at 61-62.

In this case, when the district judge interviewed the juror, the juror said that he had seen the defendant during the break, but "truthfully . . . wasn't paying much attention." When the judge asked whether there was anything about the observation of the defendant that would have impact on the juror's "decision in any way whatsoever in this case," the juror said, "No. Except that I passed somebody in the hallway." The juror had not told any of his fellow jurors about the incident, and he was instructed not to do so.

On this record, there was no abuse of discretion in denying Race's first motion for mistrial. The juror did not mention that Race was in handcuffs and, in any event, indicated that nothing about his observation would affect his decision-making "in any way whatsoever." He had not told his fellow jurors of the encounter. The district judge ruled, in essence, that there was no "fundamental failure" in the proceedings, and we agree. We need not reach the second question of whether any prejudice was curable or injustice could otherwise be avoided without a mistrial declaration.

We also see no abuse of discretion in the district judge's denial of the second motion for mistrial; and, again, we need not reach the second question. There is nothing in the record to challenge the district judge's statement that the juror was out of the deliberations room for only 2 minutes; nor is there any indication whether the other jurors actually continued deliberations in his absence. Indeed, they would have had to disregard the judge's admonitions both the evening before and again that morning to do so. As noted above, we ordinarily presume that jury members follow the instructions they are given by district judges. See Becker, 290 Kan. at 856.

*Failure to Instruct on Defendant's Age at Time of Offenses*

Race argues that he could not be convicted or sentenced under "Jessica's Law," K.S.A. 21-4643, unless the judge's instructions required the jury to find that he was 18 years old or older at the time of the offenses. The instructions to the jury did not include Race's age as an element of the crimes.

This issue raises questions of statutory interpretation and constitutional interpretation; thus, this court's review is unlimited. *State v. Bello*, 289 Kan. 191, 195-96, 211 P.3d 139 (2009) (citing *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 [2006], and *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 [2007]). Because Race failed to object to the elements instructions on this basis at trial, he must meet a clearly erroneous standard on appeal. See K.S.A. 22-3414(3); *State v. Daniels*, 278 Kan. 53, 57, 91 P.3d 1147 (2004). Clear error occurs if the "reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred." *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003).

Race is correct that his age of 18 or over was an element of the off-grid crimes with which he was charged. See K.S.A. 21-3502(c); K.S.A. 21-3504(c); K.S.A. 21-3506(c). It was error for a district judge to fail to instruct the jury to examine that element. See *State v. Morningstar*, 289 Kan. 488, 494-95, 213 P.3d 1045 (2009); *State v. Gonzales*, 289 Kan. 351, 371, 212 P.3d 215 (2009); *Bello*, 289 Kan. at 199-200.

However, in circumstances where there is unrebutted evidence of the defendant's age of 18 or over, we have been willing to hold that the error committed here is harmless. See *State v. Colston*, 290 Kan. 952, 976, 235 P.3d 1234 (2010) (citing *State v. Reyna*, 290 Kan. 667, Syl. ¶ 10, 234 P.3d 761 [2010]) ("When a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.").

Here, as the State points out, Race himself gave unrebutted testimony on this topic. His testimony demonstrated that he was well over the age of 18 at the time of the charged offenses.

The district judge's failure to instruct on this element of the crimes was harmless. Race is not entitled to reversal or sentence modification on this ground.

## CONCLUSION

Given all of the foregoing discussion, judgment of the district court is affirmed.

LEBEN, J., assigned.