NOT DESIGNATED FOR PUBLICATION

No. 119,921

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY LEROY DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed October 11, 2019. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant, and *Anthony Leroy Davis*, appellant pro se.

*Darrin C. Devinney*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE, J., and DANIEL D. CREITZ, District Judge, assigned.

PER CURIAM:  Anthony Leroy Davis appeals his conviction of battery of a law enforcement officer. Davis claims the district court erred by (1) denying his motion for a mistrial and (2) denying his motion to dismiss under the Uniform Mandatory Disposition of Detainers Act (UMDDA). Finding no error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 2016, Davis, an inmate at the El Dorado Correctional Facility (EDCF), punched Lieutenant Gary Merrick, a correctional officer, in the eye after a

1

dispute about seating during breakfast. EDCF serves breakfast in the gym and seats the inmates section by section because there are more inmates than available seats. On that day, Merrick was filling section C when Davis sat in section B. Merrick told Davis to move to section C, but he became agitated so Merrick asked him to leave the gym.

Davis testified that he was agitated because Merrick used racial slurs and told him to move to "colored section C." Merrick denied using any racial slurs or offensive language. Once Davis was out of the gym, Merrick tried talking to him but then decided that he needed to be restrained. Davis did not follow Merrick's commands to be restrained, and instead, he punched Merrick in the right eye.

On December 7, 2016, the State charged Davis with one count of battery of a law enforcement officer in Butler County District Court, the county where EDCF is located. Davis waived his preliminary hearing on February 27, 2017, and the court scheduled the case for a jury trial. On June 8, 2017, Davis signed a disposition of detainer application. The records clerk completed the certificate and filed the application and certificate with the district court on June 16, 2017. On September 7, 2017, Davis moved for dismissal, arguing that the district court lacked jurisdiction under the UMDDA because it had been more than 180 days since the charge was filed and he had not been brought to trial.

On November 6, 2017, the district court held a hearing on Davis' motion to dismiss. After hearing arguments from counsel, the district court denied the motion, finding that the UMDDA application was effective upon filing with the district court on June 16, 2017. Using that date, the district court found that it had until December 16, 2017, to try the case and that the case was already set for trial before that date.

A jury trial began on November 14, 2017. The State called five witnesses. Special Agent Thomas K. O'Brien of the Kansas Department of Corrections (KDOC) testified that Davis was an inmate at EDCF. O'Brien testified that he was called to investigate the incident on October 10, 2016, and he reviewed video from three cameras that captured

the fight between Davis and Merrick. The State showed the videos to the jury. Next, Matthew Wiebe, a correctional officer at EDCF during that time, also testified that Davis was an inmate at EDCF. Wiebe stated that he was working nearby when he and some other officers heard loud arguing, heard Merrick say that Davis needed to be restrained, and then saw Davis punching at Merrick with closed fists.

Merrick also testified that Davis was an inmate at EDCF. On the morning in question, Merrick was seating inmates for breakfast in section C when Davis sat in section B. Merrick testified that he told Davis to move to section C and when he failed to do so, Merrick told him to leave the gym. Merrick testified that he tried talking to Davis but decided that he needed to be restrained. At that point, Davis punched him in the right eye. Merrick testified that he had a black eye from Davis' punch and identified photos depicting his black eye. Merrick also testified that three cameras recorded the incident, and he commented on the videos as they were again played for the jury.

Randy Johnson, a disciplinary sergeant at EDCF on the date of the incident, testified that he saw Merrick and Davis arguing and then saw Davis hit Merrick in the side of the face. Lisa Wiebe, a nurse practitioner, testified that she treated Merrick for periorbital pain, bruising, and swelling.

Davis testified on his own behalf. When Davis went to the witness stand, a uniformed EDCF officer escorted him to the stand and sat behind him. Davis did not object to this procedure. Davis testified that he was an inmate at EDCF and even stated that he had "been in prison a long time." Davis testified that Merrick bumped him first, that Merrick tried to reach for him, and that Davis believed Merrick was going to beat him, so he responded with a "counterpunch." Davis also claimed that the videos had been altered because the situation was much different from what appeared on the videos. At some point during the trial—it is unclear exactly when from the record—an EDCF officer

3

clanged Davis' transport chains on a chair while a witness was testifying. Davis did not object to the chain clanging incident to the district court when it happened.

On the second day of the trial, at the close of the evidence, Davis moved for a mistrial. Davis argued that he was prejudiced by the chain clanging and the EDCF officer escort. The State responded that Davis' current life sentence for a violent crime justified the officer escort. The district court denied the motion for mistrial, noting that KDOC was in charge of security and that the officer escort was a reasonable security practice given the exit door near the witness stand. The district court found that the chain clanging and the officer escort were not prejudicial because the jury already knew from the evidence, including Davis' own testimony, that he was an inmate.

The jury found Davis guilty of battery of a law enforcement officer. On February 15, 2018, the district court sentenced Davis to 65 months' imprisonment. Davis timely filed a notice of appeal.

MOTION FOR MISTRIAL

On appeal, Davis argues that the district court erred in denying his motion for a mistrial. Davis argues that the clanging of his chains and the EDCF officer escort to the witness stand infringed on his presumption of innocence. He also argues that the district court erred by not inquiring of the jury whether the jurors noticed the clanging of the chains and whether the noise had any impact on the jury. The State argues that the district court properly denied the motion for mistrial because Davis never established a fundamental failure in the proceeding and the district court found there was no prejudice to Davis.

A district court may order a mistrial when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the

4

defendant or the prosecution." K.S.A. 22-3423(1)(c). The statute creates a two-step process where the district court must determine: (1) whether there was a fundamental failure in the proceeding and (2) if there was, whether it was possible to continue the proceeding without injustice. *State v. Barlett*, 308 Kan. 78, 88, 418 P.3d 1253 (2018).

Appellate courts review a district court's denial of a mistrial for abuse of discretion. *Barlett*, 308 Kan. at 88. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126-27, 431 P.3d 850 (2018). The party asserting the district court abused its discretion bears the burden of showing the abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

The first step in the inquiry requires the appellate court to determine whether the district court abused its discretion in determining whether there was a fundamental failure in the proceeding. *Barlett*, 308 Kan. at 88. In ruling on Davis' motion, the district court did not make any express finding on whether there was a fundamental failure in the proceeding. But explicit use of the phrase "fundamental failure" is unnecessary because the district court's analysis can imply a fundamental failure finding. See *State v. Kleypas*, 305 Kan. 224, 275, 382 P.3d 373 (2016) (finding that the district court implicitly found a fundamental failure even when the district court did not explicitly use the phrase "fundamental failure" in its findings); *State v. Race*, 293 Kan. 69, 84, 259 P.3d 707 (2011) (finding that the district court "in essence" found no fundamental failure when the trial court determined no prejudice occurred). The appellate court then reviews the district court's implicit finding for an abuse of discretion. *Barlett*, 308 Kan. at 88.

Here, the district court observed that KDOC was in charge of the security because Davis was an inmate at EDCF. The district court found that having an officer escort Davis to the witness stand was a reasonable security practice because Davis was in custody on a first-degree murder conviction and there was an exit door near the witness

5

stand. As for the chains, the district court found that the clanging was unintentional and that, when the noise occurred, the jury was paying attention to the testifying witness. Ultimately, the district court found that the actions did not rise to the level of prejudice warranting a mistrial because the jury already knew from the evidence that Davis was an inmate. Based on the district court's analysis, it appears that the court implicitly found that there was no fundamental failure in the proceeding that would warrant a mistrial.

Davis argues that the district court erred by not asking whether the jury noticed the clanging of the chains and whether the noise affected the jury. But Davis never asked the district court to make such an inquiry during the trial. In any event, in reviewing the record as a whole, the district court did not abuse its discretion in denying the motion without inquiry into the jury's perception of the chain clanging. The record reflects that from the beginning of the case, including during voir dire, the jurors knew that the case involved an altercation between an inmate and a correctional officer. Almost every witness for the State testified that Davis was an inmate at EDCF. Davis also testified that he was an inmate at EDCF and even stated that he had "been in prison a long time."

Davis also argues that the chain clanging and the officer escort deprived him of his presumption of innocence. K.S.A. 2018 Supp. 21-5108(b) provides that a "defendant is presumed to be innocent until proven guilty." But as discussed above, Davis' custodial status was already known to the jury—based on the nature of the charge and evidence introduced at trial—before the chain clanging incident or the officer escorting Davis to the witness stand. Moreover, the district court instructed the jury to recognize Davis' presumption of innocence. Appellate courts presume that juries follow the instructions given by the district courts. *State v. Sisson*, 302 Kan. 123, 131, 351 P.3d 1235 (2015).

In sum, the district court did not abuse its discretion by implicitly finding that the actions alleged did not constitute a fundamental failure in the proceeding. Because there was not a fundamental failure in the proceeding, the district court did not need to

undertake the second step of the analysis. Davis fails to show that the district court abused its discretion by denying his motion for a mistrial.

MOTION TO DISMISS UNDER THE UMDDA

In his pro se supplemental brief, Davis argues that the district court erred by denying his motion to dismiss under the UMDDA. The UMDDA is a statutory procedure that allows an inmate of a Kansas penal or correctional institution to require disposition of his or her pending criminal charges within the state. K.S.A. 2018 Supp. 22-4301(a); *State v. Burnett*, 297 Kan. 447, 452-53, 301 P.3d 698 (2013). The UMDDA states that an inmate can request final disposition of an untried information by submitting a request, in writing, to the court and the county attorney. K.S.A. 2018 Supp. 22-4301(a). Upon an inmate's request, the Secretary of Corrections must certify certain information, such as the inmate's term of sentence, and send it to the court and the county attorney. K.S.A. 2018 Supp. 22-4302. Then, "[f]ollowing the receipt of the certificate by the court and county attorney from the secretary of corrections, the indictment, information or complaint shall be brought to trial . . . within 180 days." K.S.A. 2018 Supp. 22-4303(b)(1)(A).

Davis argues that the district court erred by denying his motion to dismiss because the 180-day period expired before he was brought to trial and so the district court lacked jurisdiction over his case. Davis argues that the 180-day period begins to run on the date the State files the criminal charge against the defendant in district court. The State characterizes Davis' argument as one for speedy trial under K.S.A. 22-3402 and does not address Davis' argument under the UMDDA.

Whether a defendant's right to a speedy trial under the UMDDA was violated is a question of law subject to de novo review. *Burnett*, 297 Kan. at 451. Likewise, whether

7

jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

Davis' disposition of detainer application and certificate were filed with the district court on June 16, 2017. The 180-day period starts "[f]ollowing the receipt of the certificate by the court and the county attorney." K.S.A. 2018 Supp. 22-4303(b)(1). Thus, the district court correctly found that the 180-day period began to run on June 16, 2017, the day the district court received the certificate. When Davis argued his motion at the hearing on November 6, 2017, only 143 days had passed since the filing of the certificate and application. When the jury trial began on November 14, 2017, only 151 days had passed since Davis' detainer application and certificate were filed with the district court. Thus, the district court did not err in denying Davis' motion to dismiss because he was brought to trial within 180 days of the district court's receipt of his disposition of detainer application and the certificate.

Finally, we note that Davis filed a pro se letter of additional authority with this court on June 24, 2019. But Davis' letter does not provide additional authority for the issues raised in the parties' briefs, as required by Supreme Court Rule 6.09(b) (2019 Kan. S. Ct. R. 39). Instead, Davis' letter of additional authority appears to advance a new issue that was not briefed: whether he was correctly being held in custody on the day of the offense. An appellate court will not consider issues raised for the first time in a Rule 6.09(b) letter. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Thus, we will not address the issue Davis has sought to raise in his letter of additional authority.

Affirmed.