NOT DESIGNATED FOR PUBLICATION

No. 125,248

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH LEE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Submitted without oral argument. Opinion filed May 10, 2024. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Tracey T. Beverlin*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.

PER CURIAM: Kenneth Lee was convicted of aggravated indecent solicitation of a child and lewd and lascivious behavior after a nine-year-old girl testified that he had sexually solicited her and exposed himself to her. He argues that the evidence was not sufficient to support either conviction, as the State's case relied heavily on the girl's story and there were inconsistencies in her testimony. Lee also argues the district court erred in admitting a string of texts that he sent his girlfriend because they were not relevant under K.S.A. 60-401(b). We are not persuaded by either argument and affirm Lee's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

We refer to the girl at the center of this case under the pseudonym Jane. Jane traveled to Pratt when she was nine years old to visit family. During Jane's time in Pratt, she lived with Lee, Lee's longtime girlfriend, and another child. Jane testified that although she was initially nervous about the trip since Lee "had a drinking problem," she became excited when Lee agreed not to drink while she was with them. Jane's trip was supposed to be a short one—about a week. But it was the spring of 2020, and the advent of the COVID-19 pandemic turned this short trip into an indefinite stay. After a few weeks, Lee began drinking again almost daily.

On June 5, 2020, Jane, Lee, the girlfriend, and the other child had just finished eating dinner outside, and Lee and the two children were playing baseball. Jane became upset with Lee for something that he said, and Jane started yelling at him and trying to hit him with the baseball bat. After the situation was defused, Lee went inside to give the other child a bath. Jane then approached the girlfriend and told the girlfriend that Lee had spoken to her inappropriately.

Jane first told the girlfriend that "it was nothing bad." But after Jane had trouble saying what she wanted to say, she used the girlfriend's phone to write "SD," telling the girlfriend that it meant "To do something." The girlfriend asked if it was something inappropriate, and Jane said "Yeah, it was inappropriate." The girlfriend then asked, "Does the S stand for suck, sucking?" and Jane replied, "Yeah.'" Ashley said "Like, Dick?" Jane said, "Yeah."

The girlfriend took Jane to the police station the next day. Jane told a police officer that Lee had spoken to her inappropriately. Although Jane had trouble verbalizing what had occurred, the officer learned that Lee had made inappropriate comments to Jane

2

in the kitchen and then later in a bedroom. The officer passed this information along to a detective for further investigation.

A few days later, the detective met with Jane and Jane's mother to conduct another interview. There, Jane continued to have trouble verbalizing what Lee had said because Jane said "they were bad words." The detective asked if she would be willing to write down the words on his iPad, and Jane wrote down "S-E-X-U-L." The detective asked Jane if she was trying to write "sexual," and she agreed. Jane then wrote "Suck D." The detective asked Jane if the letter D represented "a boy's private parts," and Jane said that it did. Jane said, "That's what [Lee] was trying to make me do."

The detective also learned that, when the two were in the kitchen, Lee had asked Jane to do something that was like "a female's body parts and what you do with food." The detective asked Jane if she meant "eating," and she said yes. Jane went on to tell the detective that, in a separate incident, Lee had exposed himself to Jane in the kitchen. As a result of this investigation, the State charged Lee with aggravated indecent solicitation of a child, lewd and lascivious behavior, and criminal damage to property—a charge stemming from a tangentially related incident between Lee and the girlfriend.

Jane testified at trial. She explained that one night, when Lee's girlfriend and a friend were outside, Lee, Jane, and the other child were in the living room. Jane said she and the other child were on the couch. The other child was watching TV while Jane was getting ready to go to sleep. Jane said that when she went to give Lee a goodnight hug, Lee whispered to Jane and "asked to see [her] private part." Jane told him no, and Lee said, "Good night. Love you." Jane testified that she felt "[a]wkward" but still gave him a hug anyway because she "thought he didn't mean it" because he was drunk.

Jane testified that the next night, when everyone else was asleep, she was lying with the other child in bed when Lee came in and asked if she wanted a drink of water.

3

She said yes, and she went with Lee into the kitchen. Jane said that Lee "told me to sit on the counter, and then spread open my legs" and asked "[i]f he could eat my front private part bottom." Jane said she felt "weirded out and gross," jumped off the counter, went back to the bedroom, and got into bed. Lee followed Jane back into the bedroom. There, Lee told Jane that "there was more than one God," that "he was meant to do it to [her] before [she] left," and that "he was going to be the first one to do it, before [she] left, than any other man." Jane testified that she believed Lee meant that he was going to "sexually assault me or [something] else close to that." Jane testified that she told Lee to "Quit" and "Stop" "many times," but Lee kept talking about it. Jane said she was "kind of yelling and screaming" at him to stop so that Lee warned her that she was going to wake up the other child and the girlfriend if she continued. When Jane told Lee to "Quit" again, Lee left.

Jane testified that Lee did not use any actual words in the bedroom to describe what he wanted her to do. At trial, Jane said she did not want to say what Lee was trying to get her to do in the bedroom because it made her feel uncomfortable. When asked if she could write it down, Jane wrote on the prosecutor's iPad, "To sexually harass me to do things I didn't want to do."

Jane testified that, after the second incident, she told Lee that she "wished he didn't say some things he said," and Lee replied, "I know, and I won't do it again." But Jane said another incident occurred a few days later. The girlfriend and the other child were outside, and Jane was inside at the dining room table finishing her dinner when Lee asked her, "'Do you want to see something?" Jane told him no, but Lee showed Jane his "front private part." Jane said she looked away.

Jane then testified that the final incident occurred when the girlfriend was at work, and Lee, Jane, and the other child were outside. Lee told Jane that he needed help with something, and Jane followed him downstairs to the laundry room. Once down there, Lee "set [Jane] on the washer, but [she] jumped down and ran to the hall." Jane said that Lee

4

pulled down his pants; she was "pretty sure" Lee showed her his "private part," but she was not sure because she looked away.

Jane's mother also testified. She explained that Jane had called her crying on the night of June 5 and told her to talk to the girlfriend because Jane was too uncomfortable to tell her mother what happened. Jane's mother also testified that after the incidents, Jane experienced a drastic shift in behavior and now regularly sees a therapist.

The jury convicted Lee of aggravated indecent solicitation of a child, lewd and lascivious behavior, and criminal damage to property. Lee was sentenced to a controlling 36-month prison term and lifetime postrelease supervision.

DISCUSSION

Lee's appeal focuses on his convictions for aggravated indecent solicitation of a child and lewd and lascivious behavior. His appeal challenges those convictions in two ways. First, he asserts that evidence at trial was not sufficient to support his convictions for those crimes. Second, he argues the district court erred in admitting a string of texts that he sent his girlfriend. We find neither argument persuasive.

1.  *There evidence was sufficient to support Lee's convictions.*

When the sufficiency of the evidence is challenged in a criminal case, the evidence is reviewed in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, Syl. ¶ 1, 371 P.3d 915 (2016). Appellate courts do not participate in the trial or observe the witnesses' testimony; we therefore do not reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Keel*, 302 Kan. 560, 566, 357 P.3d 251 (2015). Because of this, we will not set aside a conviction based solely

5

upon the testimony of a complaining witness unless that testimony is so incredible and improbable as to defy belief. *State v. Race*, 293 Kan. 69, 79, 259 P.3d 707 (2011). Practically speaking, these principles mean that if the jury believes the testimony of a victim that does not defy belief and there is some evidence in the record to support each element of the offense, we will affirm the conviction. *State v. Borthwick*, 255 Kan. 899, 908, 880 P.2d 1261 (1994).

Lee claims there was not sufficient evidence presented at trial to support his convictions for aggravated indecent solicitation of a child and lewd and lascivious behavior. His primary argument—which applies to both convictions—is that there were so many inconsistencies in Jane's story between her initial statements to the girlfriend and her testimony at trial that the jury could not have believed her. And the State's case for both crimes hinged almost entirely on Jane's account of the events.

In particular, Lee argues that from the time Jane first approached the girlfriend on June 5 to the time Jane ultimately testified at trial, the number of instances that she alleged had expanded from one to four. Lee notes that Jane only told the girlfriend about the "SD" incident and told the girlfriend that "[n]othing else" happened. Yet by the time Jane testified at trial, she claimed four incidents occurred—Lee asking if he could see Jane's private part in the living room, the incident that started on the kitchen countertop and ended in the bedroom, Lee exposing himself in the kitchen, and Lee exposing himself in the laundry room. Lee points out that his girlfriend and his girlfriend's mother doubted whether anything inappropriate had occurred. Given these inconsistencies, Lee argues that Jane's testimony was not sufficiently credible to support his convictions.

We disagree. We first note that Lee is not challenging the sufficiency of the evidence so much as asking us to reweigh the evidence and conduct an independent assessment of Jane's credibility. But we entrust those tasks—weighing the evidence and evaluating the credibility of witnesses—to the jury and do not second-guess those

assessments on appeal. If Lee thought inconsistencies in Jane's accounts rendered her testimony unbelievable, those inconsistencies should have been highlighted at trial. The jurors had the benefit of hearing Jane's testimony firsthand, alongside each of the arguments that Lee makes on appeal, and they found Jane's testimony to be credible. Considering Jane's testimony, along with the other evidence submitted at trial, the evidence was sufficient to support Lee's convictions for aggravated indecent solicitation of a child and lewd and lascivious behavior.

To prove aggravated indecent solicitation of a child, the State had to show that Lee knowingly enticed, invited, or attempted to persuade Jane to submit to oral contact of her genitalia or commit oral contact with Lee's genitalia. See K.S.A. 21-5508(b)(1). Jane testified that, after telling her to sit on the countertop and spread her legs, Lee asked Jane "[i]f he could eat [her] front private part bottom." Lee then followed Jane into the bedroom and tried to get her to "SD."

Contrary to Lee's assertions, Jane's testimony did not go uncorroborated. The girlfriend testified that Jane told her that Lee tried to get her to "SD"; Jane tearfully told her mother that she should talk to the girlfriend because something had happened that Jane felt uncomfortable talking about; Jane recounted similar stories to both the officer and the detective during the formal investigation; and Jane's mother testified to a dramatic shift in her behavior after the incidents occurred. The evidence at trial was sufficient to support each element of aggravated indecent solicitation of a child.

To prove lewd and lascivious behavior, the State had to show that Lee exposed his genitalia in the presence of Jane with the intent to arouse or gratify his sexual desire. See K.S.A. 21-5513(a)(2). Again, Jane testified that Lee exposed himself to her on at least one occasion. But even so, Lee argues that the State failed to present evidence that this exposure was done to satisfy his sexual desires—that even if Jane's testimony was believed, it did not show any intent to arouse or gratify his sexual desire.

7

Lee's argument is not supported by the record. While there was no evidence that Lee said anything sexually explicit when he exposed himself to Jane, the jury could have inferred this intent from the surrounding circumstances. For example, Lee exposed himself to Jane only when he was alone with her. He did so after he had asked Jane if he could see her private parts in the living room, asked to perform oral sex on her when she was sitting on the kitchen countertop, and told her after he had followed her back into the bedroom that "he was going to be the first one to do it, before [she] left, than any other man." This course of conduct is sufficient evidence for a rational fact-finder to deduce that Lee exposed himself to Jane to arouse or gratify his sexual desire.

The evidence presented at trial was sufficient to support Lee's convictions for aggravated indecent solicitation of a child and lewd and lascivious behavior.

2. *The district court did not err in admitting Lee's texts into evidence.*

Lee also argues that the district court erred when it admitted into evidence a string of text messages that Lee had sent his girlfriend. Lee argues that these texts were not relevant because they were not referring to the incidents with Jane; he asserts they were related to something else entirely.

"Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. K.S.A. 60-407(f)." *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). Evidence is relevant if it is probative and material. K.S.A. 60-401(b). "'Evidence is probative if it has any tendency in reason to prove a fact,'" and evidence is material if it "'has a legitimate and effective bearing on the decision of the case and is in dispute.'" *State v. Scheetz*, 318 Kan. 48, 64, 541 P.3d 79 (2024). We review a district court's assessment of relevance—and specifically the probative value of evidence—for an abuse of discretion. *State v. Reid*, 286 Kan. 494, Syl. ¶ 5, 186 P.3d 713 (2008).

At trial, the State sought to admit a string of texts that Lee had sent his girlfriend the day after he had spoken to the detective at the police station. These texts read:

- "My little lady."
- "I have failed so bad and so much."
- "[Jane]."
- "I know she dislikes me."
- "I know she wants to be away."
- "I've been horrible, everything."
- "Kill me. I'm bad with a monster inside me."
- "Those demons are hard."
- "I've ruined everything."
- "I've been so bad."
- "I shout at God, 'Why?'"
- "Why can I be like this?"
- "I've become a monster."

Lee objected, arguing that without any context, these texts could cause the jury to improperly infer that he was discussing the incidents with Jane—making it look like he was "basically confessing to something [that] he [was] not confessing to." The district court overruled the objection because Lee would have the opportunity to present his own evidence to place the texts in the context he asserted was proper. Lee renews this argument on appeal, asserting the texts were not relevant because they did not refer to the incidents with Jane. Rather, he claims these texts represented his regret for leaving his job at the fire department, his struggle with alcohol abuse and mental health, and his sadness at being unable to financially support his family. In other words, he argues that the texts

were not probative because they did not relate to whether he committed the crimes charged.

K.S.A. 60-401(b) requires that evidence demonstrate "any tendency in reason to prove any material fact." Here, the district court did not abuse its discretion when it found that the texts met this standard. It was the State's position that Lee sent these texts in the wake of his discussion with the detective, showing his remorse for the events with Jane. The State argues that these texts are material because they have some real bearing on whether Lee committed these crimes, and they are probative because the context of these texts tends to show that Lee engaged in the conduct Jane had described to the police officers and felt guilty about his actions.

Lee argues that these texts were especially damaging because they could be improperly considered by the jury to be a confession, especially since the case "hinged" on Jane's testimony. But as the district court correctly noted when it overruled Lee's objection, Lee had the opportunity to present his own evidence to counter the effect of these texts. And he did. Lee testified that the true context was that he was telling his girlfriend about the regret he felt for leaving his job at the fire department, his struggle with alcohol abuse and PTSD, and his sadness at being unable to financially support his family. The jury apparently did not find this account persuasive, but the fact that the jury believed the State's explanation for the texts does not render those texts inadmissible.

The district court did not abuse its discretion when it found that these texts were relevant to the State's case. Lee has not demonstrated any error in their admission.

Lee has not apprised us of any error in his trial. We thus affirm his convictions.

Affirmed.